MARY NUGENT *vs.* GREENFIELD LIFE ASSOCIATION.

Bristol.    October 24, 1898. — January 3, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Assessment Life Insurance — Statute — Discrepancies between Original Application and Copy — Misrepresentations — Defences.*

Where, in an action upon a policy of life insurance, there are discrepancies of substance between the original application and the copy annexed to the policy, a finding that the copy so annexed is not a correct copy within the meaning of § 21 of St. 1890, c. 421, entitled "An Act relating to assessment insurance," and a ruling that defences founded upon alleged misrepresentations in the application are not open to the defendant, are correct.

CONTRACT, upon a policy of insurance for $2,000, issued by the defendant on the life of Patrick J. Nugent, and made payable to the plaintiff, who was his mother. Trial in the Superior Court, before *Richardson, J.,* who made certain rulings stated in the opinion, and reported the case for the determination of this court. If any of the rulings were wrong, the verdict was to be set aside and a new trial ordered; otherwise, the verdict was to stand, and judgment was to be entered for the plaintiff. The facts appear in the opinion.

*H. A. Dubuque,* for the defendant.

*J. W. Cummings,* (*E. Higginson & C. R. Cummings* with him,) for the plaintiff.

BARKER, J. Our statutes deal differently with assessment insurance, the contracts of fraternal beneficiary organizations, and ordinary premium insurance. The principal respective enactments are St. 1890, c. 421, governing assessment insurance; St. 1898, c. 474, relating to the operations of fraternal benefit organizations; and St. 1894, c. 522, which regulates

ordinary premium insurance. Neither of these statutes is generally, or as of course, applicable to the kinds of insurance regulated by the other acts. See St. 1890, c. 421, §§ 1, 27; St. 1898, c. 474, § 22; St. 1894, c. 522, §§ 2, 3.

The present defendant is an assessment insurance company, organized under St. 1890, c. 421, entitled, " An Act relating to assessment insurance," and the contract or policy on which it is sued in this action is one of assessment insurance, and therefore is governed by the provisions of that statute.

The declaration is upon a policy written on July 7, 1896, on the life of the plaintiff's son, who died on August 25, 1896. The answer, in addition to a general denial, alleged that the policy was issued upon representations. in an application therefor, and which were part of the policy, and were false and untrue, and made with an actual intent to deceive, and were false as to matters increasing the risk of loss, and also that the insured warranted the truth of his answers in the application, and that the warranties were untrue. At the trial, it was admitted that the policy was issued pursuant to a written application, a copy of which purported to be annexed to the policy. Upon comparing this supposed copy with the original application a number of differences between them were pointed out, and the presiding justice found that the copy attached to the policy was not a correct copy as required by law, and for that reason ruled that the original application was not admissible in evidence.

In putting in its defence, the defendant offered to show that the answers of the insured to certain questions in the application and in the medical examiner's report, which it contended was part of the application, were false, fraudulently made with intent to deceive, and that they materially affected the risk. The presiding justice refused to admit the evidence, and ruled that the defendant, having failed to comply with St. 1890, c. 421, § 21, could not put in evidence of the untruth of answers of the insured in his application or in the part relating to the medical examined and refused to allow the defendant to put in any evidence tending to show that the insured made false answers. The question for decision is whether these rulings were correct.

This statute was not the first instance in which our Legisla-

ture regulated the form of policies. and the construction to be given to insurance contracts. By St. 1861, c. 152, it provided that in fire insurance the conditions of the insurance should be stated in the body of the policy, and that neither the application of the insured nor the by-laws of the company, as such, should be considered as a warranty or as a part of the contract. This provision was so changed by St. 1864, c. 196, as to provide that neither the application nor by-laws should be considered as a warranty or a part of the contract except so far as incorporated in full into the policy and so appearing on its face. See Pub. Sts. c. 119, § 138; St. 1887, c. 214, § 59; St. 1894, c. 522, § 59. By St. 1878, c. 157, it was provided that no misrepresentation made in obtaining a policy of fire or life insurance should be deemed material, or defeat or avoid the policy or prevent its attaching, unless made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss. See Pub. Sts. c. 119, § 181; St. 1887, c. 214, § 21; St. 1894, c. 522, § 21. See also *White* v. *Provident Savings Life Assurance Society*, 163 Mass. 108; *Levie* v. *Metropolitan Ins. Co.* 163 Mass. 117; *Stocker* v. *Boston Mutual Life Association*, 170 Mass. 224; St. 1895, c. 271, § 1; and St. 1895, c. 281, § 1.

. The earliest provision requiring a correct copy of the application to be contained in or attached to every policy which contains any reference to the application, either as forming part of the policy or contract, or having any bearing on the contract, is found in the statute under which the defendant was incorporated. St. 1890, c. 421, § 21. This section is quite full and minute in its directions, and a penalty is provided in a subsequent section for neglecting to comply with any provision of the act. St. 1890, c. 421, § 26. One provision of § 21 is that, " unless so attached and accompanying the policy, no such application . . . shall be received as evidence in any controversy between the parties to or interested in said policy or certificate, and shall not be considered a part of the policy or of the contract between such parties."

A somewhat similar provision with reference to applications for life insurance was incorporated into the general law regulating premium insurance by St. 1893, c. 434, now re-enacted in St. 1894, c. 522, § 73. This provision came before the court in

*Considine* v. *Metropolitan Ins. Co.* 165 Mass. 462, and it was there held that the provision was applicable to all premium life insurance, that where it rendered the application inadmissible and forbade it to be considered as part of the contract the defendant could not show what was said by the insured at the time of his medical examination, and that the provision was within the constitutional power of the Legislature. After this decision the section now under discussion, St. 1890, c. 421, § 21, was before this court in *Boyden* v. *Massachusetts Masonic Association,* 167 Mass. 242, so far as it related to the by-laws of the insurer, and, no copy of the by-law being contained in or attached to the policy, it was held that the rights of the parties must be determined as if there were no such by-law.

The policy sued on in the present case differs from those before the court in the two cases last cited, in that there is annexed to it what purports to be a copy of the application, while in those cases no copy was contained in or annexed to the policies.

It is not contended that the statute is merely directory, in the sense that it only commands the insurer to insert in or attach to the policy a correct copy, and leaves the rights of the parties otherwise unaffected. The answer to such a contention would be found in the language of the section which explicitly provides that, unless the correct copy is so inserted or attached, the application shall not be received in evidence or considered a part of the policy or of the contract.

The defendant contends that, by accepting the policy with what purported to be a copy of the application annexed to it, paying the premium which was payable before its delivery and the premium payable in the following August, and retaining and bringing suit upon the policy as it was written, without making objection to the inaccuracy of the copy actually annexed, the insured and his beneficiary have waived all objections to the copy, and assented to the copy as it was, so that the plaintiff is now estopped from raising the question of discrepancy.

One difficulty with this contention is that it does not appear that the insured or his beneficiary had knowledge that the copy was not correct. The documents which constituted the application were not in their custody, but in that of the defendant,

and they might well rely upon the defendant's assertion that a copy of the application was in fact annexed. Another difficulty is that the defendant in no way changed its position for the worse, relying upon the acceptance and retention of the policy as it was delivered. There is no occasion to consider what would have been the situation if the defendant had made inquiry, and had received an assurance from the insured that the copy was correct, or had requested to be allowed to correct any discrepancies. In bringing suit upon the policy the plaintiff made no explicit or implied affirmance of the contract as it purported to be made with the application as a part of it, rather than as it actually was under the operation of the statute. We find nothing which should be considered as a waiver, or should estop the plaintiff, and it is not necessary to consider whether there are considerations of public policy which under different circumstances might require us to hold that the effect of the statute could not be waived by the contracting parties.

The consideration of the question whether the finding that the copy annexed to the policy was not a correct copy as required by law, and the ruling that for that reason the application was not admissible in evidence, were right, requires us to construe the expression " correct copy " contained in the statute. It is to be noticed that the purpose of the section is not alone to declare what construction shall be placed upon the contract, but also to impose upon corporations and their officers a positive duty in respect to the issuing of policies containing any reference to the application, or where the application has any bearing upon the contract. In other words, the section is a regulation under a penalty of the manner in which those who write assessment insurance shall write their contracts, as well as a rule for determining the construction to be given to such contracts.

Neither aspect of the section requires us to hold that the copy must be exactly and literally correct in order to be a compliance with the law. Mere clerical errors which do not affect or alter the sense of the document, and cannot vary or alter the rights or obligations of the parties in any possible event, or in any way tend to mislead or prejudice any one, are not matters to which,

in either of its aspects, the statute is directed, and such clerical errors do not prevent a copy in which they may be found from being a correct copy within the meaning of the law. On the other hand, it cannot reasonably be held that no errors of substance will render the copy incorrect within the meaning of the law, unless they are in themselves material to the questions on trial in the action in which it is in dispute whether by reason of the incorrectness of the copy the application is admissible in evidence, or to be considered part of the contract. The law is not complied with if there are errors of substance in the copy, and when the law is not complied with the explicit command is that the application shall not be received as evidence, and shall not be considered a part of the policy or of the contract. If this seems a harsh provision, and one which may be used by the insured as a weapon with which to do wrong rather than as a shield to protect himself from wrong, it is yet a necessary construction, which we cannot refuse to make without interfering with the province of the Legislature. A copy which differs in substance from the original cannot be a correct copy in the common acceptation of terms, and the double purpose of this statute precludes us from seeking to find for the language used a meaning different from its ordinary sense. If in any case an insurer suffers from having unintentionally annexed a copy which is not correct, it is because, having the means of annexing a correct copy, and so being able to rely upon defences open to a contract of which the application is a part, he breaks the law by annexing an incorrect copy, or no copy at all, and is thereby precluded from defences founded upon the application.

In the present case the discrepancies between the application and the copy annexed to the policy were in part merely clerical and of no consequence, and in part matters of substance. It is not essential to specify them all. The omission of the heading "Application for Assurance in the Greenfield Life Association of Greenfield, Massachusetts," we consider immaterial, as the heading was no part of the application itself, which states explicitly on the body of the instrument that it was made to the defendant. The heading, like the filing printed on the other side of the same piece of paper, was merely something printed for convenience on the same paper with the application,

but not a part of it. If the heading had been referred to in the body of the application, or if its presence was the only means appearing on the paper of determining to whom the application was made, it might be a material part of the application. So too the statements of the medical examiner, which follow the signature of the applicant to that part of the application headed " Medical Examiner's Report," are merely a report to the insurer by one of its own officers upon the application as made and signed by the insured, and are not a part of the application within the meaning of the law, the language of which is " a correct copy of the application as signed by the applicant." The applicant signed twice, once upon each of two separate pieces of paper, and when his signatures were made the blanks on which the medical examiner afterwards made out a statement of the result of his personal examination were unfilled, and that statement was not part of the application " as signed by the applicant." For this reason, the omission of that statement did not make the copy incorrect. Nor do we consider the heading of the medical examiner's report a part of the application, and we think the partial omission of the heading of no importance.

Such discrepancies as the omission of the preposition " in " before the words " Fall River," in answering as to the applicant's place of residence, the misspelling of " temperate " as " temparate," the omission of the word " got" from the answer, " got cold four years ago during two days, no bad effects remaining," and of the preposition " for " in copying the answer " for cold," to the question for what the applicant last consulted a physician, the substitution of " or " for " and" in the phrase " so far as you know and believe," and the omission of " got" and " the " in copying the answer " got hurt in the mine," are all merely clerical, not affecting the meaning of the application, and not preventing the copy in which they appear from being a correct copy within the meaning of the statute.

Whether the omission of the name of the county in copying the applicant's statement of his place of birth can be held a mere clerical error, and whether several of the other discrepancies are such as to prevent the copy from being correct within the meaning of the law, we do not stop to decide, as there are

discrepancies which are plainly matters of substance, which might in circumstances easily conceivable affect the rights of the parties, and which in our opinion required the presiding justice to find that the copy was not a correct copy as required by law, and to refuse to admit the original in evidence. These discrepancies were the incorrect answer given in the copy to the question as to the amount in which the applicant's life was then insured, the answer in the application being $100 and in the copy $1,000, and the erroneous insertion of the answer " No " to the question, " Has any member of your father's family died of an inherited disease? " which was left unanswered in the original application. An omission to answer is not of course, or ordinarily, a negative answer, and merely founds a waiver of the answer by the insurer. *Hall* v. *People's Ins. Co.* 6 Gray, 185, 191. *Liberty Hall Association* v. *Housatonic Ins. Co.* 7 Gray, 261. The amount of previous insurance, and the presence or absence of inherited disease in the family of the applicant, are deemed important by insurers, and an untrue statement in respect of either might well be the occasion of future controversy as to the insurance written upon the strength of such a statement.

The application being inadmissible in evidence and no part of the policy or contract, it necessarily followed that the defendant could not be allowed to put in any evidence tending to show that the insured made false statements in his application, including those made by him to the medical examiner. Such evidence could not be admitted without disobeying the law which says that those statements shall not be considered a part of the contract. *Considine* v. *Metropolitan Ins. Co.* 165 Mass. 462, 466. See *Bardwell* v. *Conway Ins. Co.* 122 Mass. 90.

The policy sued on was issued on July 7, 1896, and it failed to comply with the provisions of St. 1896, c. 515, § 1, requiring the words " Assessment Plan " to be printed in bold type upon both the policy and the application. The defendant now contends that this statute is merely directory. As no question as to that statute appears to have been raised at the trial, and it does not appear to have had any part in the decisions there arrived at, we have now no occasion to consider its meaning or effect.

None of the rulings to which the defendant excepted being wrong, by the terms of the report the verdict is to stand, and judgment is to be entered thereon for the plaintiff.

*So ordered.*