PROVIDENT SAVINGS LIFE ASSUR. SOC. OF NEW YORK v. HADLEY.

(Circuit Court of Appeals, First Circuit. April 24, 1900.)

No. 285.

1. INSURANCE—CONSTRUCTION OF POLICY—CONFLICT OF LAWS.
In an application for life insurance, made, by a citizen of Massachusetts in the state of New York, the question, "State here the exact kind, of policy or policies desired," was answered, "Twenty-year endowment bond." Thereafter the insurance company forwarded to the applicant, at his home, in Massachusetts, five bond policies, of $5,000 each, and requested him to send his check for the premium "if, after inspection, they were found in all respects satisfactory," which he did. The application provided that the insurance applied for should not become binding upon the company until the first premium thereon had been actually received. *Held,* that as the acts of approval, acceptance, and payment were performed in Massachusetts, the policies were Massachusetts contracts.

2. SAME.
Where the rights of parties to a contract are in dispute, and are presented for adjudication in the state where the contract was closed, the controversy is to be determined according to the law of that state.

3. SAME—APPLICATION AS PART OF POLICY—STATE STATUTE.
Under Acts Mass. 1894, c. 522, § 73, declaring that every policy which contains a reference to the application for insurance must have attached thereto a correct copy of the application, and that unless so attached it shall not be treated as a part of the policy, the application will not be allowed to go to the jury, in an action on a policy to which the applica-

tion is not attached, where the policy was approved and accepted, and the premium paid, by the insured in Massachusetts, though the application therefor was made in the state of New York.

**4.** Same—False Representations in Application—Materiality—Question for Jury.

Where, under the law, an application for life insurance cannot be treated as a part of the policy, and for that reason is not submitted to the jury, but the application is permitted to be used in evidence for the purpose of showing the representations made by the insured, and as bearing upon the question whether the company was influenced to enter into the contract by false and material representations, the materiality of the alleged misrepresentations and false statements is a question for the jury.

**5.** Instructions to Jury—Judge's Expression of Opinion on Evidence.

In charging the jury, in an action on a policy of life insurance, upon the question whether the insurance company was influenced to enter into the contract by false and material representations, the court said: "It is difficult for me to see that it is material. Perhaps it will be difficult for you to see that it is. But this is not for me to pass upon, but for you." *Held* that, the judge's right to interfere with the finding of the jury upon such question being expressly renounced in the charge, the expression of the judge's opinion was without prejudice.

**6.** Insurance—Application—False Representations— Materiality — Question for Jury.

Where an application for life insurance cannot be considered a part of the contract for insurance, because it is not attached to the policy, and there is therefore no warranty in respect to the questions and answers contained therein, but it is sought to avoid the policy because of false representations, which it is alleged formed an inducement to the contract, the question whether the material and substantial facts shown by the evidence are sufficient to show the representations to be materially untrue, and whether the facts are so far inconsistent with the representations relied upon as to establish a material misrepresentation, are questions for the jury.

**7.** Same—Instructions to Jury.

Upon the question whether the representations in an application for insurance that the applicant had never used spirituous liquors to excess were in substance untrue, the court instructed the jury that it is not sufficient to avoid the policy to prove a single case of excess, merely, nor a case of overindulgence thoughtlessly in one, two, or three instances. *Held* that, the instruction being simply explanatory of the measure of proof in respect to the question of a substantial variance between the conditions shown by the evidence and those shown by the answers, there was no error.

**8.** Same—Time Limit upon Evidence—Discretion of Court—Review.

Where it is sought to avoid a policy of life insurance upon the ground of the falsity of the representation of the assured, in his application, that he had never used intoxicating liquors to excess, a reasonable time limit may be made by the court, within which the inquiry into the falsity of the representation is to be confined, and the determination of such limit involves a discretion which is not ordinarily subject to review.

**9.** Same—Statements Made Carelessly—Instructions to Jury.

An application for life insurance represented that the applicant had never been engaged in the liquor business. In an action upon the policy it appeared that, at a period eight or ten years before the making of the application, the insured had owned and operated a drug establishment, and that, as an incident to the business, liquors were sold in the way liquors are usually sold in such establishments. In respect to such misrepresentation the court instructed the jury "that the mere fact that a statement which was not true is made is far from making out a defense upon this point. The answer might have been made carelessly." *Held,* that since the charge of the court elsewhere clearly pointed out the differ-

ence between material and immaterial representations, and the rules of law applicable to each, and informed the jury that any apparent departure from such rules in the expressions of the court should be disregarded, the instruction, if erroneous, was without prejudice.

In Error to the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 90 Fed. 390.

Robert M. Morse (William T. Gilbert and Thomas F. Desmond, on the brief), for plaintiff in error.

Alfred Henenway (Arthur J. Selfridge, on the brief), for defendant in error.

Before COLT, Circuit Judge, and WEBB and ALDRICH, District Judges.

ALDRICH, District Judge. Hadley, to whom the five $5,000 20-year life insurance bonds in suit were issued, was a citizen of Massachusetts, and on the 2d day of January, 1897, being in New York, applied to the Provident Savings Life Assurance Society of New York for insurance upon his life, and the insurance described in his application as that desired was $25,000. Among the printed questions in the application addressed to the applicant was the following: "State here the exact kind of policy or policies desired." To this Hadley answered: "Twenty-year endowment bond." Parts 1, 2, and 3, the usual forms of application used by that company, were filled out and executed; and in the usual course of the business the applicant was examined, and informed that he had passed the medical department. The first premium was not paid, but it was understood that the 20-year endowment bond was to be filled out and forwarded to Hadley at his home, in New Bedford, Mass. Thus the matter stood until January 9, 1897, when the secretary of the company inclosed the five policies, of $5,000 each, which are in suit, saying:

"Enclosed we hand you bond policies numbers 80,932–3–4–5–6, on your life, aggregating in amount $25,000, in accordance with your application made a few days ago at this office. We have been obliged to issue this insurance in separate policies, for the reason that our bonds are engraved only in amounts of one thousand dollars or five thousand dollars. * * * If, after inspection, they are found in all respects satisfactory, please send check for $847.50, the total of the five semiannual installments of $169.50 each."

The question as to the place of contract,—whether New York or Massachusetts,—and the question whether the New York or the Massachusetts law should govern the contract, were very elaborately and ably discussed by counsel at the arguments; but it seems to us, after all, that the problem presented may be solved upon simple grounds, and that we need not determine whether the variance between the application executed in New York, which called for a single $25,000 "twenty-year endowment bond" as "the exact kind of policy * * * desired," and the five $5,000 endowment bonds finally delivered in Massachusetts, was of sufficient substance to operate, in and of itself, to open what had been done in New York, and to carry the act of final completion to Massachusetts, for the simple reason that the company, in its communication through its secretary, who, it must be presumed,

acted upon authority, treated the contract as incomplete, and left its approval and acceptance and completion at the option of the party in whose favor the five $5,000 policies were written, thus leaving the final act of acceptance and payment to be performed in Massachusetts. While the general plan of insurance offered by the company in New York was accepted, the particular and literal form finally offered for approval and acceptance in Massachusetts, and the particular form which became the contract, was neither offered nor accepted in New York, nor until the particular form was received in Massachusetts on January 9, 1897, which was subsequently accepted and paid for in that state. So we have no hesitation in saying there was no error at the trial in treating the contract as a Massachusetts contract. It is true that Hadley made no point of the variance, and that he subsequently forwarded a check for the amount in question. Nevertheless the new condition involved in the different kind of policies was submitted to him for his rejection or approval and acceptance, and, that having been done, it is quite immaterial whether the option was acted upon one way or the other. It is not a question as to how he acted, but whether something was left open to be acted upon. Moreover, quite aside from the question whether, by reason of the fact that the application was not attached to the policy, it is or is not to be treated as a part of the final contract, the statements which it contains may be considered upon the question whether the contract was a complete and binding contract in New York on the 2d of January, 1897, or whether it was incomplete and not binding until the final act of approval and acceptance and payment in Massachusetts on some day subsequent to January 9, 1897; and it is expressly provided in part 1 of the application that the insurance applied for shall not become binding upon the society until the first premium thereon has been actually received by said society, and as the act of payment, as well as the act of approval and acceptance, was performed in Massachusetts, the policy must be deemed to be a Massachusetts contract. Society v. Clements, 140 U. S. 226, 232, 11 Sup. Ct. 822, 35 L. Ed. 497; Insurance Co. v. Robinson (C. C.) 54 Fed. 580, 583.

The question whether the rights of the parties should be administered under New York law or under Massachusetts law is deemed material by the parties, for the reason that the New York law is supposed to be less favorable to the policy holder than that of Massachusetts; but we understand it to be well settled that where rights are in dispute, and are being adjudicated in the state where the contract is closed, such dispute is to be determined according to the law of that state. The conditions upon which a given state may permit insurance companies to do business therein may properly enough become a part of the public policy of such state. And the supreme court of Massachusetts has frequently and recently upheld and sustained the legislative policy of Massachusetts as declared in respect to regulating the conditions under which insurance companies shall do business in that state. Nugent v. Association, 172 Mass. 278, 280, 283, 52 N. E. 440; Considine v. Insurance Co., 165 Mass. 462, 43 N. E. 201. The statutes of Massachusetts (Acts 1894, c. 522, § 73) declare that every policy which contains a reference to the application for insurance must

have attached thereto a correct copy of the application, and that unless the application is attached it shall not be treated as a part of the policy. This statute is sustained by the authorities cited, as well as others. Similar statutes in other states have been sustained, but with that we have nothing to do here. It is quite sufficient to ascertain the law of Massachusetts on the subject, and whether this court, sitting in Massachusetts and enforcing a Massachusetts contract, should be governed by the law of that state; and as to this proposition the law seems to be well settled that the Massachusetts statute, as interpreted by the highest court of that state in respect to a question of this kind, should govern. Fairfield v. Gallatin Co., 100 U. S. 47, 25 L. Ed. 544; Taylor v. Ypsilanti, 105 U. S. 60, 26 L. Ed. 1008; McElvaine v. Brush, 142 U. S. 155, 12 Sup. Ct. 156, 35 L. Ed. 971; Merchants' & Manufacturers' Nat. Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236; Wilson v. North Carolina, 169 U. S. 586, 592, 18 Sup. Ct. 435, 42 L. Ed. 865. Therefore there was no error below in directing the trial upon the lines of a Massachusetts contract and of the Massachusetts law. The case of Nugent v. Association, 172 Mass. 278, 280, 281, 52 N. E. 440, and other Massachusetts cases, certainly go to the extent of treating the application as no part of the contract where it is not attached to the policy as required by the statutes. The Massachusetts statute neither discriminates in favor of Massachusetts insurance companies, nor against foreign insurance companies, but is sweeping in its provision that every policy which contains a reference to the application of the insured, either as a part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application, and, unless so attached, the same shall not be considered a part of the policy. In view of this statute and the Massachusetts decisions, we have no hesitation in holding that it applies to any insurance contract which, under the circumstances of the case in question, is an insurance contract which was entered into in Massachusetts, and that, in accordance with the judicially interpreted statutes of Massachusetts, the court below properly refused to submit the application to the jury as a part of the contract, and as containing warranties. Yet, notwithstanding the fact that the application was not treated as a part of the contract, the circuit court, under the common-law rule, permitted the application to be used in evidence by the company, not as a part of the policy or as an application, but as showing representations made by Hadley, and as bearing upon the issue whether the insurance company was influenced to enter into the contract by false and material misrepresentations, of a character intended to deceive. The plaintiff below maintains in argument here that under the statutes of Massachusetts, and Considine v. Insurance Co., 165 Mass. 462, 43 N. E. 201, Boyden v. Association, 167 Mass. 242, 45 N. E. 735, and Nugent v. Association, 172 Mass. 278, 281, 52 N. E. 440, the application, not having been attached to the policy, was inadmissible as evidence for any purpose whatever, and therefore that the defendant below had no right to introduce it for the purpose of showing what was said by the insured. We do not pass upon the question whether the statutes or the decisions of the state court should control us upon a question of evidence and a common-law defense like the one in question, for the reason that the

verdict was for the plaintiff below, and no exception presents this question for review. Therefore, without deciding the question, but assuming, as we must for the purposes of this case, that the defense in this respect was properly entertained, and the evidence thereon properly admitted, we will consider the questions which are presented. The questions come from the defendant below, and the exceptions are based —First, upon the ground that the application should have been admitted as a part of the contract; and, second, when used to show misrepresentations, that the question of the materiality of the statements in the application was for the court, rather than the jury. We have passed upon the first, and, as to the second, it was contended in argument for the insurance company, in accordance with the exception, that the question whether the alleged misrepresentations contained in the application were material was a question for the court, rather than the jury; but the cases cited in support of this position were based upon the idea that the court submitted to the jury the materiality of questions which the parties themselves, by the express terms of a contract, of which the application was a part, had determined to be material. Such cases are quite aside from the issue presented by the situation here, which results from the fact that the statute excludes from the contract the application which contains the alleged misrepresentations. So, in this view, the case presents the policy alone as the contract, and the issue is whether it should be avoided on the common-law ground of misrepresentation; and, under such an issue, we think the court properly left the question of the materiality of the alleged misrepresentations and false statements to the jury. Campbell v. Insurance Co., 98 Mass. 381, 396.

We now come to the question whether there was error in the instructions to the jury upon this issue. Counsel urge with great seriousness and with energy that the defendant was prejudiced by reason of the instructions to the jury thereon; and the particular point is that the court, in submitting the question to the jury, remarked: "It is difficult for me to see that it is material. Perhaps it will be difficult for you to see that it is." But it must be said that in connection with this remark the learned judge said, "But this is not for me to pass upon, but for you." It is urged on the other side that it is established by repeated decisions that a court of the United States, in submitting a case to the jury, may, at its discretion, express its opinion upon the facts. We do not understand that the courts of the United States possess any peculiar right to express opinions upon facts submitted to the jury which, in the absence of restricting statutes, is not possessed by other courts. It is true, however, that there are cases which hold that an expression of an opinion by the judge upon the facts is not error which will disturb the verdict; but it will be found that such cases are generally put upon the ground that the judge ultimately left the question to the jury, and distinctly reminded the jurors that the question was, after all, a question to be decided by them upon their own responsibility. The decisions are not grounded upon the right or propriety of the expression, but, rather, upon the ground that the judge immediately renounced his right to interfere with the findings upon the questions of fact submitted to the jury, and that therefore the jury was

not influenced, or the parties prejudiced. So it would seem that the learned judge in this instance, if any error was committed, immediately rectified it, thus bringing himself within the line of the decisions applying to such a situation.

The questions attended with the most difficulty are those which relate to the instructions given with reference to the statement of the applicant that he had never been engaged in the sale of spirituous or intoxicating liquors, wherein the jury was told that the answers might have been carelessly made, and upon the other point, with reference to the question whether the applicant had ever used spirits, wine, or malt liquor to excess, where the jury was told, in effect, that the alleged excessive use of intoxicating liquors disclosed by the evidence might have been the result of thoughtless overindulgence. This point stands quite differently from the point just considered, which was directed against the expressions which it is claimed were expressions of an opinion by the judge upon the facts. One stands upon the ground that the court, having qualified the remark, charged upon the jury the entire responsibility of finding the facts, and that the defendant therefore was not prejudiced, while in the other instances, and those now under consideration, the court, in submitting the questions to the jury, gave them a rule of law under which they were to exercise and discharge the responsibility of finding the facts; and the inquiry is whether the jury were given too much latitude with respect to the questions which they were to decide. In the consideration of the questions with which we are now dealing, we must keep in mind that the contractual rights of the parties reside solely in the insurance bonds, and that all considerations of warranties in respect to the questions and answers contained in the application are out of the case, and that, while the paper which was called an "application" was used before the jury, it was used, not because it was an application, but because it was a paper which contained certain statements which it is claimed were material statements which induced the company to enter into the contract, and that such material representations were misstatements of fact. So it will be seen that the question was one, generally speaking, of avoiding a contract, upon common-law lines, on the ground of misstatement, and quite aside from a case with the usual warranties, and the consequences that follow the usual conditions which exist in life insurance contracts when the application is accepted and treated as a part thereof. But it was not a contract where the parties had equal information as to the subject-matter thereof. It was a contract where, from the particular conditions, one must rely on the other for his knowledge of the facts, and where the other is bound to diligence, care, thoughtfulness, and good faith in respect to his information. Therefore it comes within that exceptional class of contracts termed "uberrimæ fidei," where the rules in respect to avoidance on the ground of misstatement are different and more rigorous than those governing where the parties stand upon the same ground with respect to information. It has been said by a modern text writer, in respect to contracts of this kind, that a misrepresentation made recklessly or carelessly, and without caring whether it be true

or false, is fraudulent.   Of course, this must be subject to the qual-
ification that the misrepresentation must have been material, and
must have been acted upon by the other party.   It has also been said
that, to the general rule that misrepresentations not amounting to
fraud, and not forming a term of the contract, do not affect its va-
lidity, there are exceptions in cases of certain special contracts,
sometimes said to be uberrimæ fidei, where the most perfect good
faith is required.   Lord Herschel, in Derry v. Peek, 14 App. Cas. 337,
points out a distinction between actions of deceit, where fraudulent
misrepresentation must be shown in order to recover, and actions
for rescission of a contract on the ground of misrepresentation of a
material fact.   In the first instance the representations must be
known to be false, while in the other contracts induced by state-
ments made recklessly cannot stand.   It is said that a distinction
exists in England between life insurance contracts and fire insur-
ance contracts, in respect to a question of this kind, but it would
seem that there is no such distinction recognized in this country.
The early case of McLanahan v. Insurance Co., 1 Pet. 170, 186, dis-
cusses the attitude of the insured; and the situation is treated as
calling for "due and reasonable diligence in cases of this nature,"
and it is said what constitutes this "is principally matter of fact for
the consideration of a jury."   In Vose v. Insurance Co., 6 Cush. 42,
48, it is said that, where there is no warranty, an untrue allegation
of a material fact, or the concealment of a material fact, will avoid
the policy, though such allegation or concealment be the result of
negligence, and not of design.   In Campbell v. Insurance Co., 98
Mass. 381, 389–391, it is demonstrated that the warranty in insur-
ance enters into and becomes a part of the contract, although the
representation is in its nature no part of the contract, and may be
proved, though existing only in parol, and preceding the written in-
strument.   It is also there said that this principle is in some respects
peculiar to insurance, and that the representations of the insured on
or before the time of making the contract are a presentation of the ele-
ments on which to estimate the risk proposed to be assumed, and
that they are the basis of the contract,—its foundation,—on the faith
of which it is entered into; and it is said in that case (at page 396)
that an instruction that an untrue statement innocently made would
not avoid the policy, as a general statement of the law applicable to
representations in insurance contracts, was too liberal and errone-
ous, but (at page 395) that it was a question for the jury to deter-
mine, under instructions, whether the facts which appeared in evi-
dence were so far inconsistent with the representations made as to
establish a material misrepresentation.   So it would seem that the
question becomes a question for the jury whether the material and
substantial facts shown by the evidence are sufficient to show the
representations to be materially untrue, and that it may, in a given
case, become a question whether the facts are so far inconsistent
with the representations relied upon as to establish a material mis-
representation, and this would likewise be a question for the jury.
In the case last mentioned it was said, in substance, that to instruct
that statements innocently made would not avoid the contract on the

ground of misrepresentations was, in effect, giving the jury too great latitude in that respect, for the question is not whether the answers were made innocently, but it is for the jury to determine, upon the evidence, and in view of all the circumstances, whether the representations in the answers to the inquiries varied from the truth in any respect material to the risk, and that it was for the jury to judge, "not only of the fact of variance, but of its extent and materiality." When that case was before the court upon a subsequent hearing, Mr. Justice Gray, in speaking for the court (at page 401), treats the representations as apart from the warranties, to be determined, not upon the ground whether they were innocently or ignorantly made, but whether, in view of the evidence, they were substantially and materially untrue, and, if so, they avoided the policy, though they were made ignorantly and in good faith. In the case at bar the circuit court submitted to the jury, under instructions, the question whether the misrepresentations were material to the risk, but did not submit the question whether the evidence disclosed conditions so substantially different from the representations as to enhance the risk; but to this there was no exception.

One of the exceptions to be determined upon the lines of the foregoing general observations was taken to the expression:

"I must instruct you that it is not sufficient to prove a single case of excess, merely,—not sufficient to prove a case of overindulgence thoughtlessly in one, two, or three instances."

This was said to the jury, and related to the question whether the representations that the insured had never used spirituous liquors to excess were, in substance, untrue, in the sense of the contract; and in this we can find no substantial error. It was simply explanatory of the measure of proof in respect to the question whether there was any substantial variance between the conditions shown by the evidence and the conditions disclosed by the answers; and, taking this together with the other instructions on the subject, the jury was, in effect, instructed that it was not sufficient to show a single case of excess, merely,—not sufficient to prove a case of overindulgence thoughtlessly in one, two, or three instances. In substance, it was saying that the expression "excess" was used in the sense of a condition increasing the insurance risk, and should be interpreted in a broader sense than a single indulgence, and as directed against a habit, or, at least, a condition, which, as a matter of fact, was of sufficient substance to increase and enhance the risk, within the contemplation of the parties. This was simply giving the jury an opportunity to determine the substance of the issue,—in other words, to determine whether the conditions shown by the evidence were, in the sense of the contract, substantially and materially at variance with the representations upon which the contract was made. Moreover, the instructions on this branch of the case were sufficiently favorable to the insurance company; for the jury was told to consider, first, whether or not the statements to which the counsel called attention were material to the risk, in the way explained, and whether they were untrue, and then to consider whether the defendant relied upon such statements as were found to be material to the

risk, and whether, if relied on, they were inducements to the issuing of the policies,—not the sole inducement, not the entire inducement, but if, among other things, they were a substantial inducement, contributing to the result which brought about their issue,—and that, if these things all concurred, then the verdict must be for the defendant, whether there was an intention on the part of Hadley to deceive or not, and independently of any such intention.

The point is also taken that the time limit upon the evidence, except that of a general character, tending to show that the insured was guilty of excessive use of intoxicating liquor to the period subsequent to 1886, was not warranted. This point is based upon the same alleged representations in the application, and which were as follows: "Have you ever used spirits, wine, or malt liquor? Ans. Yes. Have you ever used them to excess? Ans. No." It is probable that the court below, acting upon the idea that the application was not a part of the contract, determined the question of time limit upon the ordinary rules as to remoteness. Ordinarily the question of remoteness in respect to a situation of this kind would be a question for the court to determine at the trial, and not a question subject to review; but the particular question presented is whether the expression, "never used liquor to excess," places a limitation upon the rule which would otherwise obtain as to the exercise of discretion by a trial judge in respect to the question of remoteness. It must be assumed that this question of remoteness was determined at the trial with reference to the idea that the actual conditions to be shown, as varying from the representations upon which the company relied, must present matter which would have substantially and materially enhanced the risk at the time of the contract. So it was for the court to say, within reasonable limits, what conditions would fairly tend to show this, and what were too remote in point of time. Although the general expression, whether he had ever indulged excessively, literally carries it, in point of time, to his childhood, it is not reasonable that such scope should be given in a trial where the issue is whether the conditions actually existing at the time of the contract were so far at variance with the statements actually made as to have substantially and materially enhanced the risk. To take an extreme for purposes of illustration, it is manifest that no one would contend that the scope of the evidence should go back to and include the day of the insured's birth, although literally the question and the answer carry it there. So it follows that a reasonable time limit, which should comprehend the substantial and material conditions embodied in the contract, may and should be made; and the determination of a question of remoteness of this kind involves discretion ordinarily exercised at the trial, and a discretion ordinarily not subject to review.

The other instruction or remark to the jury to which exception was taken is this:

"You must bear in mind that the mere fact that a statement which was not true is made is far from making out a defense upon this point. The answer might have been made carelessly."

102 F.—55

As to this point, we are unanimous in the conclusion that the remark, under the circumstances of this particular case, should not disturb the verdict; but, while we all agree as to the result in this respect, we do not base our conclusions upon the same ground. I cannot avoid the conclusion that this was, in substance, saying to the jury, on this point, that the insured would be relieved from the consequences of misrepresentation if it was done negligently, thoughtlessly, or carelessly, while the rule would at least require that the party should act with reasonable care and diligence and thoughtfulness in respect to information upon which the other contracting party is expected to act. It is claimed on one hand that this remark was qualified by what followed, where it is said, "If made incidentally, if made without reckless intent, if made through mere oversight, where it is not material to the risk, it would not answer to establish the defense," while on the other hand it is insisted that, instead of qualifying, this emphasized what had been said before, in that it minimized the issue of materiality which was being submitted to the jury, by characterizing the statement as one which would not amount to a defense, even if untrue, if made incidentally, without reckless intent, or through oversight, where it is not material to the risk. On the whole, taking all the instructions together, I cannot view them otherwise than as leaving the impression upon the jury that if the answers were made carelessly or through oversight, but without reckless intent, the policy should not be avoided. I think the instructions on this point may have given the jury to understand that, at least, as to matters which the insured deemed immaterial, relief might be granted on the ground that he acted carelessly or indifferently. This, I think, gave the jury too great latitude in this direction. It is true, it does not follow that, because a representation is not literally true, the policy is avoided, but, at least, care and diligence and thoughtfulness should be exercised in making the answers; and then it becomes a question of fact for the jury whether the representations induced the contract, whether they were material, and whether the conditions shown are substantially and materially at variance therewith, and whether answering them in accordance with the conditions shown by the evidence would have increased the risk in the estimation of the insurance company, and whether, as a matter of fact, such conditions did increase the risk. I do not say that a party who has innocently and honestly, but ignorantly, stated that he has no disease, when in fact he has consumption, would not be relieved, under some circumstances, if killed by the cars, and not by consumption; or, if one is in honest doubt whether a certain condition is a disease, and, on the whole, thinks it is not, and if such condition turns out to be disease, but a disease which does not contribute to the loss of life, that it may not become a question for the jury, under certain circumstances, and under proper instruction, whether it was a material misstatement, within the meaning of the contract. I do not say whether the party may or may not be relieved, on the ground of mistake or reasonable care, from material misstatements about conditions which do not contribute to the loss; but I do say, as to statements of even.

doubtful materiality, the party, under such circumstances, should exercise reasonable care and thoughtfulness in respect to his statements, and should not be relieved on the ground that he answered carelessly. In this case the question of materiality involved in such situation was treated as of such a character and of such importance as to entitle the parties to go to the jury upon the question whether or not the statements were material misstatements; and, under the instructions, the jury, if finding the statements material misstatements, might have acted upon the idea that the plaintiff could be relieved from the consequences thereof on the ground that the insured deemed the questions immaterial, and answered them carelessly or incidentally. When the case is not one of warranties, but of alleged misrepresentations, the question, after all, is whether the actual conditions were materially and substantially different from the statements made, and whether the statements influenced the contract; and this means, of course, that the conditions shown by the evidence to exist must be such as materially and substantially to enhance the actual risk beyond that represented by the statements upon which the company acted, and these are questions for the jury under instructions. But, when such conditions are found by the jury to exist, a beneficiary plaintiff cannot be relieved upon the ground that the insured deemed the statements immaterial, and made them carelessly. So it follows that the expression that the answer may have been made carelessly was, in the abstract, erroneous. On the whole, as said, I must accept the remark as, in the abstract, erroneous. Still I hold to the view that the error was harmless, and should be treated as harmless error, not prejudicing the insurance company, and for that reason not to be accepted as a sufficient ground for disturbing the verdict. This is so for the reason that it is more than difficult, it is even impossible, for me to see, in view of the full instructions, which were quite sufficiently favorable to the defendant, on the other branch of the case,—upon the more serious question as to the excessive use of intoxicating liquor, which involved a reasonable and substantial question for the jury, and upon which the jury found for the plaintiff,—that the company could have been prejudiced on this branch, or the jury influenced by the remark to reach a result which it would not have otherwise reached. It is impossible for me to see that the company could have been prejudiced by this inadvertent remark in relation to a statement in the application in respect to an inconsequential condition, which it is difficult to see could in a substantial and material manner have enhanced or affected the risk. This remark related to the statement by the insured that he had never been engaged in the liquor business. The insured, who at the time of the policy was a manufacturer of cotton yarns, at a period eight or ten years before had owned and operated a drug establishment; and, as an incident to the business, liquors were sold in the way liquors are usually sold at such establishments. It is impossible, as said, to see that such business conditions, which ceased so long before the contract, could in a substantial and material way have enhanced the risk; and it is difficult to see that in a case of alleged misrepresentation, not warranties, a verdict against

an insured, based upon such evidence or conditions as showing substantial and material misrepresentations, should not be set aside on the ground that it was against the evidence. Suppose this question had been answered: "Yes; as a druggist, according to the usual course of such establishments. But my connection with that concern ceased more than ten years ago;" is it reasonable to suppose that the insurance company would have refused the risk for that reason? While the representation was literally untrue, it is difficult to see that it varied from the truth in any respect material to the risk. The insured may have honestly interpreted the question in accordance with a somewhat common acceptance of the meaning of such an expression as personal liquor business over a bar, yet, after all, it is not a question of literal truth or of honest misinterpretation, but one of substance. As said in Campbell v. Insurance Co., 98 Mass. 381, 401, the representations need not be literally true, but substantially true in all respects material to the risk to be assumed. So I say that in this respect the variance between the conditions proven and the answers made was not of sufficient substance to become the subject of reversible error by the inadvertent remark to which exception was taken.

COLT, Circuit Judge. In my view, the ruling that the contract was a Massachusetts contract, and was to be controlled by the law of that state, was without error, and the rulings on evidence were correct. When the judge, in his charge to the jury, came to the contract, his instructions on the distinction, in contracts of insurance, between warranties and representations, were without error, and clearly pointed out the difference between material and immaterial representations, and the rules of law applicable to each kind. It was sufficiently impressed on the jurors that, regardless of any expression of opinion by him on matters of fact, all such matters were exclusively for them to consider and decide. If it be admitted that, later in the charge, in the endeavor to illustrate the rules given, he fell into apparent errors of expression, it is still true that at the close of his instructions the true and correct rules were repeated, and it was distinctly told to the jurors that any apparent departures from these final statements so repeated, if there were any, should be disregarded, as unintentional and inadvertent expressions. The first and the last impressions of the charge were right, and nowhere was anything said to withdraw or negative them. So I concur in the result reached by Judge ALDRICH, though not in all respects adopting his reasoning.

WEBB, District Judge. I concur with Judge COLT.

The judgment of the circuit court is affirmed, with interest, and the defendant in error recovers her costs in this court.