### AUSTIN v. MUTUAL RESERVE FUND LIFE ASS'N.

(Circuit Court, D. Massachusetts.   August 22, 1904.)

#### No. 1,393.

1. LIFE INSURANCE—ACTION ON POLICY—DEFENSES.

   The return or tender of the premiums received on a life insurance policy is not necessary to entitle the company to defend an action on the policy on the ground that it never went into effect.

2. SAME—TAKING EFFECT OF POLICY—GOOD HEALTH OF APPLICANT.

   An applicant for life insurance, who from a time prior to his application until his death some years after delivery of the policy suffered from nephritis, or Bright's disease, which was the direct, though remote, cause of his death, was not "in good health" when the policy was delivered, within the meaning of a provision therein that it should not take effect until delivered while the applicant was in good health, nor until the first premium was paid while he was also in good health.

**3. SAME—DELIVERY TO APPLICANT NOT IN GOOD HEALTH—EFFECT OF ACCEPTING SUBSEQUENT PREMIUMS.**

Policies of life insurance and the applications on which they were issued provided that they should not take effect or be in force until delivered to the applicant in person during his lifetime and while in good health, nor until the first payment was made thereon, also while he was in good health. They contained a further provision that after they should have been in continuous force for three years they should be incontestable except for nonpayment of premiums or a misstatement of the age of the insured. They were delivered, and the first premiums were paid thereon, when the applicant was not in good health, and all subsequent premiums were paid until his death, some five years later. *Held* that, while the policies did not take effect on delivery, the acceptance of the second premiums gave them effect as contracts, though voidable, and from that time they became subject to the three-year provision.

At Law.   Actions on life insurance policies.

The following is a copy of plaintiff's declaration filed October 20, 1903:

Count 1. And the plaintiff says that the defendant corporation, on the 14th day of April, A. D. 1897, made and issued to Jonathan W. Austin a policy of insurance, a copy whereof is hereto annexed and made a part hereof, by virtue of which said corporation insured the life of said Jonathan W. Austin in the sum of five thousand dollars, payable at the death of said Jonathan W. Austin to Frances E. Austin, of Newton, in the county of Middlesex, if living at the time of the death of said Jonathan W. Austin, and otherwise to the executors of said Jonathan W. Austin. And the plaintiff says that said Frances E. Austin died on the 4th day of October, 1899, whereby said policy, by its terms, became payable to the executors of said Jonathan W. Austin at his decease. And the plaintiff further says that said Jonathan W. Austin during his lifetime had done and performed all things by him to be done and performed by the terms of said policy; that he had paid all dues, fees, assessments, and premiums required by him to be paid. And the plaintiff further says that said Jonathan W. Austin died on the 3d day of October, A. D. 1902. And the plaintiff says that due notice and proofs of death of said Jonathan W. Austin were duly given to said defendant corporation as required by said defendant, but that the defendant has neglected and refused to pay to the plaintiff the amount of said policy; and the plaintiff says that the defendant owes her the full amount of said policy and interest thereon.

Count 2. And the plaintiff further says that the defendant corporation, on the 14th day of April, A. D. 1897, made and issued to Jonathan W. Austin another policy of insurance, a copy whereof is hereto annexed and made a part hereof, by virtue of which said corporation insured the life of said Jonathan W. Austin in the sum of five thousand dollars, payable at the death of said Jonathan W. Austin to Frances E. Austin, of Newton, in the county of Middlesex, if living at the time of the death of said Jonathan W. Austin, and otherwise to the executors of said Jonathan W. Austin. And the plaintiff says that said Frances E. Austin died on the 4th day of October, 1899, whereby said policy, by its terms, became payable to the executors of said Jonathan W. Austin at his decease. And the plaintiff further says that said Jonathan W. Austin during his lifetime had done and performed all things by him to be done and performed by the terms of said policy; that he had paid all dues, fees, assessments, and premiums required by him to be paid. And the plaintiff further says that said Jonathan W. Austin died on the 3d day of October, A. D. 1902. And the plaintiff says that due notice and proofs of death of Jonathan W. Austin were duly given to said defendant corporation as required by said defendant, but that the defendant has neglected and refused to pay to the plaintiff the amount of said policy; and the plaintiff says that the defendant owes her the full amount of said policy and interest thereon.

Count 3. And the plaintiff further says that the defendant corporation, on the 14th day of April, A. D. 1897, made and issued to Jonathan W. Austin another policy of insurance, a copy whereof is hereto annexed and made a

part hereof, by virtue of which said corporation insured the life of said Jonathan W. Austin in the sum of five thousand dollars, payable at the death of said Jonathan W. Austin to Frances E. Austin, of Newton, in the county of Middlesex, if living at the time of the death of said Jonathan W. Austin, and otherwise to the executors of said Jonathan W. Austin. And the plaintiff says that said Frances E. Austin died on the 4th day of October, 1899, whereby said policy, by its terms, became payable to the executors of said Jonathan W. Austin at his decease. And the plaintiff further says that said Jonathan W. Austin during his lifetime had done and performed all things by him to be done and performed by the terms of said policy; that he had paid all dues, fees, assessments, and premiums required by him to be paid. And the plaintiff further says that said Jonathan W. Austin died on the 3d day of October, 1902. And the plaintiff says that due notice and proofs of death of Jonathan W. Austin were duly given to said defendant corporation as required by said defendant, but that the defendant has neglected and refused to pay to the plaintiff the amount of said policy; and the plaintiff says that the defendant owes her the full amount of said policy and interest thereon.

The following are the findings of law and fact:

(1) The facts are as stated in the plaintiff's declaration, except as follows:

(2) Each of the applications for the policies in suit contains the following clause:

"The applicant further agrees * * * that under no circumstances shall the insurance hereby applied for be in force until payment in cash of the first payment, while the applicant is in good health, and delivery of the policy to the applicant in person, during his lifetime and while in good health."

(3) Each policy contains the following clauses:

"This contract shall not take effect until this policy is delivered to the member in person, during his lifetime, and while in good health, nor until the first payment is paid in cash hereon, while said member is also in good health."

"If this policy of insurance shall have been in continuous force for three years from its date, it shall thereafter be incontestable, except for nonpayment of premiums as herein provided, or for misstatement of the age of the member in the application therefor, subject to the provisions hereof."

"This contract shall be governed by, and construed only according to, the laws of the state of New York, the place of this contract being expressly agreed to be the home office of said association in the city of New York."

(4) The policies were delivered to Jonathan W. Austin, who was the applicant therefor, and whose life was insured, on the 14th day of April, 1897, and he then paid the first premium for each.

(5) Jonathan W. Austin died on October 5, 1902. Meanwhile he paid several times each year, as each came due, all the premiums as stipulated in each policy; and each of said payments was accepted by the defendant corporation without the expression of any protest, condition, or qualification; but, so far as the acceptance of each was concerned, it was unqualified and unconditional.

(6) The facts with reference to the condition of Jonathan W. Austin's health, as herein stated, were not known to the defendant corporation until after Austin's decease; and seasonably, and in the proper manner, after they became known, the defendant corporation objected on that account to the payment of the policies, or any of them, but never returned or offered to return the premiums it had received.

(7) On July 9 and 10, 1896, Jonathan W. Austin was attended by Dr. Horace A. Marion, a physician, who examined him at his request. He told Dr. Marion that he had been rejected on an application for life insurance at or about that time on account of the discovery of albumen in his urine. As the result of this examination on the 9th and 10th of July, 1896, Dr. Marion discovered albumen and blood in the urine. He again examined Jonathan W. Austin on the 5th of December, 1896, for the same trouble. At that time said Austin passed about an ounce of urine, stating that the quantity was greater than normal, and that he arose once or twice at night, and passed urine very frequently. The examination on December 5, 1896, disclosed streaks of albumen in the urine, no sediment under the microscope, numerous blood corpuscles

with never two corpuscles together, and congested kidneys. Dr. Marion further attended said Jonathan W. Austin for the same trouble on November 12, 1898, November 20 and 22, December 11, 1899, March 5 and April 6, 1900, and on November 28, 1901; at all of which times he examined said Austin's urine, and found on each occasion albumen and granular casts, and the same trouble which he (said Marion) found to exist in 1896. Dr. Marion testified, and such was the fact, that the immediate cause of death was apoplexy, the remote cause being arterio sclerosis, heart hypertrophy, and nephritis. An expert testified, and his testimony was not contradicted, and was true, and the fact is, that in July, 1896, said Jonathan W. Austin was suffering from nephritis, commonly known as "Bright's disease," a sequel to the arterio sclerosis. There-afterwards the disease nephritis run its natural course, with the death of said Jonathan W. Austin its sequel. Therefore the court finds that the disease which resulted in the death of said Jonathan W. Austin existed in July, 1896, and ever after until his death, and was the cause of his death; and that when the policies were applied for the said disease was not in merely the incipient stage, but was pronounced, and, although not then perceptible to the casual observer, it was clearly marked, and perceptible on a proper medical examination.

(8) As a necessary sequence to the above facts, the court finds that Jonathan W. Austin was not in good health, within the meaning of the applications and policies, either when the applications were made, or when the policies were delivered, or the first premiums were paid.

(9) Therefore the court finds that the policies were not in force, and did not take effect, in consequence of the delivery thereof, or in consequence of the payments of the first premiums named therein.

(10) The court understands that the laws of the state of New York are to be taken cognizance of without any findings in reference thereto. Nevertheless the court finds that there is no peculiarity in the laws of that state affecting this case, and no authoritative decisions of the courts of that state concerning the issues presented herein.

(11) The court finds that, notwithstanding the foregoing facts with reference to the health of Jonathan W. Austin were not known to the defendant corporation as herein stated, yet by force of law, under the facts found herein, the payment of the second premium payable on each policy according to the terms thereof, and the acceptance thereof by the defendant corporation, created such a contract with reference to each policy that, as a consequence thereof, each policy, within the meaning of the expressions herein quoted therefrom, was in force and took effect at and from the payment of said second premium. By this it is not intended to find, and the court does not find, whether or not, after the payment of the second premium, either policy could be avoided for fraud or for breach of warranty, or for any other cause; but it finds only that on the single point as to which it is required to find the acceptance of the second premium rendered ineffectual, from the time of the payment thereof, the specific provision or provisions, in substance, that the policy should not take effect until delivered while Jonathan W. Austin was in good health, nor until the payment of the first premium was made while also he was in good health.

Joseph Bennett, for plaintiff.
Victor J. Loring, for defendant.

PUTNAM, Circuit Judge. The facts in this case are sufficiently shown by the plaintiff's declaration and the findings of law and fact filed this day.

Only one issue is made by the defendant corporation. No claim is made by virtue of any alleged fraud, warranty, or representation. Its case is rested entirely on the provisions in the applications and the policies that the policies were not to be in force, and that the contracts should not take effect, until the policies were delivered to Jonathan W. Austin, who was the applicant therefor, and whose life was insured,

while he was in good health, nor until the first premiums were paid while also he was in good health.

The findings accompanying this opinion state that the premiums re-ceived by the defendant corporation have never been returned, and no offer has ever been made to return them. This, however, is not of consequence, because, under the settled rules of the law of insurance, if the policy was never in force, it, of course, never attached, and no action could be brought upon it whether the premiums were returned or not. The remedy for a return of the premiums, according to the same settled rules, would be by an action therefor.

With reference to the meaning of the words "in good health," the expression explains itself better than any explanation which we could make in reference to it. All we need to say in this connection is that in holding that the applicant was not at the essential times "in good health" within the intent of the applications and of the policies we re-gard ourselves as well within the dividing lines which have been so often practically fixed by the courts and text-writers, some of which are referred to and explained by the Circuit Court of Appeals for this circuit in Hubbard v. Mutual Reserve Association, 100 Fed. 719, 40 C. C. A. 665, and Provident Society v. Hadley, 102 Fed. 856, 43 C. C. A. 25. The latter case appears in this court as Hadley v. Provident Society (C. C.) 90 Fed. 390.

It is plain that the expressions in the applications and the policies "in force" and "shall not take effect" must necessarily be taken in some sense in a qualified manner. According to the underlying rules of insurance, Jonathan W. Austin's life, at the time when the policies issued, was not an insurable risk; and therefore, except for the com-plications which arise in matters of life insurance on account of the numerous stipulations in contracts for this class of insurance, it might be said that the policies never attached, and, in that sense, were never in force, and, of course, never took effect. But in the present case it is clear that these expressions have not that broad range, and merely intend to distinguish between policies which have not been delivered, and those which have been delivered. In the view of the underlying rules of insurance when not qualified or limited by stipulations, which stip-ulations have, of course, an implied as well as an express effect, these policies would not have been in force or in effect, but, in view of the usual provisions of such policies, on which those now under discussion are built up, it is impossible to look at this case from that standpoint. What the provisions in this case have reference to is not to the ordinary rules which are related to the broad principles of insurance to the effect that the policies never attached, but they are to the effect that the policies were to be regarded as though they had never been deliv-ered. Their effect is that, unless the terms of those provisions of the policies are complied with, there is no contract in any sense of the word. But when the defendant corporation received the second premium it was not entitled to receive it unless there was then an existing con-tract of some nature, even though one which might be avoided either by proof of fraud, or a breach of warranty, or by showing that the applicant was not in good health when the first premium was paid. The defendant corporation was not entitled to receive the second pre-

mium if the contract were only in embryo, and its reception of it ratified the policy as having come into life and existence, although its life and existence might afterwards be terminated. Consequently, from the time the second premium was received, the provision in each policy rendering it incontestable came into effect, even with reference to all questions arising in connection with the delivery of the policy and the payment of the first premium. This, of course, would not have barred the defendant corporation from repudiating the contracts indicated by the several policies on discovery that within the period of three years named in the provision as to incontestability the applicant was not in good health when the first premium was paid. But, subject to that fact, the propositions which we enunciate declare a sound rule of law, applicable to all contracts which have at a prior stage remained in embryo, or otherwise in mere incipiency, whether by an escrow, or other qualified delivery of the instrument, or by provisions like those we are discussing. Moreover, in the present case it is especially applicable, because it gives full effect to what was undoubtedly the expectation of the parties to these policies, although they failed to use language which directly embodied it.

Notwithstanding the apparent anxiety of the defendant corporation that the court did not or would not appreciate its propositions, we wish it understood that they are perfectly clear and perfectly well understood, and that we leave the case to turn in no way on those which usually arise in cases of this class. It is on that account that we add that none of the decisions cited by the plaintiff, not even Wright v. Mutual Benefit Life Association, 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. Rep. 749, or any other decision of any court of the state of New York, reaches the question before us.

It is ordered that the findings of law and fact in this case under date of August 22, 1904, be entered of record, that either party may file a draft bill of exceptions on or before the 19th day of September next, that either party may file corrections of the other party's bill of exceptions on or before the 3d day of October next, and that upon the settlement of the bills of exceptions judgment will be entered for the plaintiff for the amount of all the policies, with interest from the time the same were payable according to the terms thereof.