GEORGE A. SMITH *vs.* SCOTTISH UNION AND NATIONAL INSURANCE COMPANY.

SAME *vs.* BOSTON INSURANCE COMPANY.

SAME *vs.* AGRICULTURAL INSURANCE COMPANY.

Worcester.    September 29, 1908. — October 21, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Insurance*, Fire.   *Evidence*, Admissions and confessions.

In an action on a policy of insurance against fire in the Massachusetts standard form, upon the question whether a statement in writing signed and sworn to by the insured was forthwith rendered to the company as required by the terms of the policy, there was evidence that the insured property was destroyed by fire in the night, that on the afternoon of the next day the plaintiff learned of the fire, that thirteen days later he delivered a sworn statement to the insurance broker through whom he had procured the insurance, supposing that he was authorized to receive it, that the broker returned the statement to the plaintiff on the ground that he had no right to receive it, that a new statement was signed and sworn to and was furnished to the company twenty-one or twenty-six days after the night of the fire, that the plaintiff was the holder of the legal title of the property insured but held it for the benefit of a national bank of which he had been the cashier and of which he was the official liquidator under winding up proceedings, that the title had been acquired by the foreclosure of a mortgage, that it was understood between the plaintiff and the mortgagor that the mortgagor was to have the balance of the proceeds of the property after his debt to the bank had been paid in full, that the insurance was upon the building and its contents, which included the furniture and fixtures of a summer hotel of considerable size, that the plaintiff was occupied every day with his duties as liquidator and knew nothing about the building or its contents and accordingly left to the mortgagor the preparation of the statement, that immediately after the fire the mortgagor was sick and was confined to his house under a physician's care for a number of days, and that the plaintiff also was delayed somewhat in getting from the architect the specifications

of the building. It did not appear how long the insurance broker retained the statement after it was delivered to him before returning it to the plaintiff, but an inference might have been drawn that he did not return it without first conferring with the defendant. *Held,* that a judge, before whom the case was tried without a jury, was warranted in finding that the plaintiff used due diligence in complying with the requirement of the policy that the sworn statement should be "forthwith rendered to the company."

If in an action on a policy of insurance against fire there is evidence that the plaintiff, on the day after a fire had destroyed the insured property but before he had learned of it, stated to an agent of the defendant that the policy had been cancelled and that no liability attached to the company, a judge, before whom the case is tried without a jury, is warranted in finding that the plaintiff had assented to the cancellation of the policy before the loss occurred.

THREE ACTIONS OF CONTRACT by the same plaintiff respectively against three different insurance companies on policies insuring the plaintiff against loss by fire to a hotel in Quincy known as the Hotel Shelton and its contents, which were destroyed by fire shortly after midnight of December 2, 1903. Writs dated April 11 and 12, 1904.

In the Superior Court the cases were heard by *Wait,* J., without a jury. In the first two cases the defendant asked the judge to rule as follows: " Upon all the evidence the plaintiff is not entitled to recover. No statement in writing signed and sworn to by the insured was forthwith rendered to the company as required by the terms of the policy." The judge refused to rule as requested and found for the plaintiff in each of these cases. The evidence in regard to the furnishing of the statement is described in the opinion.

In the third case the judge found for the defendant on the ground that the policy was cancelled. The findings of the judge on this question were as follows: " Crowell [the agent through whom the plaintiff procured the insurance] saw the plaintiff and told him of the demand for the Agricultural policy [for the purpose of cancellation]. When this was done was not clear, but I am satisfied it was some days before the fire, and that the plaintiff then determined to give up the policy and return it for cancellation intending to secure other insurance in its place, but I do not find he made the securing of such other insurance a condition of the surrender for cancellation. No written demand was made at any time on the plaintiff and no tender of return premiums was made to him by the company or by any one on its behalf;

no tender of such premiums was made to Crowell by any one. The property insured was totally destroyed by fire shortly after midnight of December 2, 1903. A special agent of the Agricultural Insurance Company, with knowledge of the fire, saw the plaintiff on December 3 at Worcester, and without telling him of the loss, asked whether the Agricultural policy was cancelled. The plaintiff said he understood that the policy was cancelled and that no liability attached to the company. He offered the policy to the special agent, who, however, suggested that it be sent to Mr. Crowell. The plaintiff, still ignorant of the loss, sent the policy to Crowell about noon time, and in Crowell's office it was marked cancelled as of November 18, 1903, and was delivered to the special agent. Crowell knew of the loss at the time. I find that the plaintiff before the fire knew of and assented to the intended cancellation of the policy, and that, upon his actual surrender of the policy into Crowell's hands for cancellation, he intended the surrender to become complete as of a date corresponding to the notice of the desire to cancel, which would be before the date of the fire."

The judge reported the three cases for determination by this court, raising only the questions which are mentioned above.

*T. H. Gage, Jr.*, for the plaintiff.

*F. W. Brown*, for the defendants, submitted a brief.

SHELDON, J. 1. In the first two of these cases the only question raised is whether the judge erred in refusing to rule, as requested by the defendant, that no statement in writing, signed and sworn to by the insured, was rendered to the company forthwith after the loss, as required by the terms of the policy; and that for this reason the plaintiff could not recover.

The policies were in the Massachusetts standard form, prescribed by R. L. c. 118, § 60 (see now St. 1907, c. 576, § 60), and contained the stipulation that " in case of any loss or damage under this policy, a statement in writing, signed and sworn to by the insured shall be forthwith rendered to the company, setting forth the value of the property insured, the interest of the insured therein, all other insurance thereon, in detail, the purposes for which and the persons by whom the building insured, or containing the property insured, was used, and the time at which and manner in which the fire originated, so far as

known to the insured." Compliance with this stipulation is a condition precedent to the insurer's liability. *Boruszewski* v. *Middlesex Assur. Co.* 186 Mass. 589, 590, and cases there cited. And see *Hatch* v. *United States Casualty Co.* 197 Mass. 101.

The property insured by these policies was totally destroyed by fire on December 2, 1903, and the plaintiff learned of the fire on the afternoon of the next day. He signed and swore to written statements and delivered them on December 16, 1903, to one Crowell, an insurance broker, whom he supposed to be authorized to receive them, but who, it has been found, had been really his own agent. Crowell returned these statements to the plaintiff on the ground that he had no authority to receive them ; and new statements were signed and sworn to on December 21, and were furnished to the companies. The defendant in the first case, the Scottish Union and National Insurance Company, received its statement on the twenty-third, and the defendant in the second case, the Boston Insurance Company, received its statement on the twenty-eighth day of the same month.

The general rule to be applied in such a case was stated by the present Chief Justice in *Parker* v. *Middlesex Assur. Co.* 179 Mass. 528, 530: " The true meaning of such a requirement in a policy is that the statement shall be sent as soon as the exercise of reasonable diligence will enable the assured to send it. When it is contended that a statement was not sent in time under such a requirement, the inquiry always is whether the insured, whose duty it was under the contract to send the statement as soon as he reasonably could, has used due diligence to send it promptly. If there is no dispute in regard to the facts, what is due diligence is a question of law for the court." And he adds, page 532: " The question whether there was due diligence has been submitted to a jury in cases where the evidence was doubtful or conflicting, and where, upon the view of it most favorable to the plaintiff, the court would find due diligence." See the cases there cited to these two propositions. The facts are of course in dispute, within the meaning of the rule just stated when, by reason of their complexity or because they do not upon their face require as matter of law an answer one way or the other as to the exercise of due diligence, this question must be decided by drawing an inference of fact from the pri-

mary facts shown. This was the rule laid down, after careful argument by distinguished counsel, in *Haskins* v. *Hamilton Ins. Co.* 5 Gray, 432, and stated by Taft, J., with very full citation of authorities in *Hamilton* v. *Phœnix Ins. Co.* 61 Fed. Rep. 379, 388. It is the general rule adopted when questions of due care or diligence have to be passed upon. *Gavett* v. *Manchester & Lawrence Railroad*, 16 Gray, 501, 506. *Foster* v. *New York, New Haven, & Hartford Railroad*, 187 Mass. 21, 25. In our opinion, this is the rule which should be followed in the case at bar.

In these cases, the facts bearing upon the question whether the plaintiff used due diligence in sending his statements to the defendants were not agreed upon, nor were they conceded at the trial. They were found by the judge upon all the evidence, and apparently were disputed until settled by his findings. They were in dispute within the meaning of the rule already stated. Did they also warrant the inference that the plaintiff under the circumstances of the case had used due diligence in sending his statements?

The plaintiff was the holder of the legal title to the property insured. In reality, he held this title for the benefit of the national bank of which he had been cashier and of which he was the official liquidator under winding up proceedings. The title had been acquired under foreclosure of a mortgage which had been given to the bank by one Taber, the former owner of the property; and it was understood between the parties that Taber was to have the property or its proceeds after the full amount due to the bank should have been paid. The insurance was upon the building and its contents, which included the furniture and fixtures of a summer hotel, apparently one of considerable size. The plaintiff was occupied with the affairs of the bank, to which as liquidator it was his official duty to attend, and was actually engaged in them every day in December. He knew nothing about the building or its contents, which might have been found to include numerous articles of furniture and fittings; and he left to Taber, who knew more about the building, the preparation of the statements. Taber was sick and confined to his house under a physician's care for some days. He was also delayed somewhat in getting from the architect the

specifications of the building.   But in spite of these circumstances statements were prepared and sworn to and delivered to Crowell on December 16.   Crowell, instead of forwarding them to the insurance companies, as from his former position as agent for the plaintiff it might have been expected that he would do, returned them, as has been stated, to the plaintiff.   It has not been found when this was done, and no evidence on the subject appears in the report; but the judge might have drawn the inference that Crowell did not do this without having first conferred with the defendants.   New statements were then prepared and given to the defendants, one twenty-one, and one twenty-six days after the fire.

It is true of course that the plaintiff was not required by this clause in the policy to prepare and furnish a proof of loss.   *Boruszewski* v. *Middlesex Assur. Co.* 186 Mass. 589, 594.  *Towne* v. *Springfield Ins. Co.* 145 Mass. 582, 584.   He had simply to render forthwith a statement in writing signed and sworn to, setting forth certain particulars, so far as known to himself.   Undoubtedly he would not have a right to delay rendering this statement long enough to enable him to prepare formal proofs of loss such as were required under the forms of policies generally used before a standard form was established by the statutes now embodied in St. 1907, c. 576, § 60.   But he is required to give these particulars so far as known to himself; and he may well take a few days, if necessary, to inform himself as to them from such sources of information as are readily within his reach.   Nor is it his duty to lay aside all other occupations, and especially whatever official or public duties may be incumbent upon him, and to render the statement before doing anything else or complying with the demands of any other duty, however urgent.   As he must not unnecessarily postpone this obligation to others, so he need not unnecessarily postpone other obligations paramount to this.   An unexplained delay for any manifestly unreasonable time will indeed bar him from sustaining any claim upon the policy; such a delay without reasonable and sufficient explanation will be equally fatal.   And if there is no explanation of such a delay by him, or if, considering whatever explanation is offered, yet upon the view most favorable to him it cannot be found that he has used due diligence,

he cannot maintain any action upon the policy, and a verdict must be ordered for the defendant.    But if from such facts as can be found the inference that he did act with due diligence would be warranted, then the question must be submitted to the jury.    This is the doctrine of our own decisions. ·See, beside the cases already cited, *Mandell* v. *Fidelity & Casualty Co.* 170 Mass. 173, 177 ; *Smith & Dove Manuf. Co.* v. *Travelers' Ins. Co.* 171 Mass. 357 ; *Harnden* v. *Milwaukee Mechanics' Ins. Co.* 164 Mass. 382 ; *Swain* v. *Security Live Stock Ins. Co.* 165 Mass. 321. The trend of the decisions in other States is to the same effect. *Donahue* v. *Windsor County Ins. Co.* 56 Vt. 374.    *Bennett* v. *Lycoming County Ins. Co.* 67 N. Y. 274.    *Carpenter* v. *German American Ins. Co.* 135 N. Y. 298.    *Martin* v. *Manufacturers' Accident Indemnity Co.* 151 N. Y. 94, 106.    *Brown* v. *London Assur. Co.* 40 Hun, 101.    *Inman* v. *Western Ins. Co.* 12 Wend. 452.    *Trask* v. *State Ins. Co.* 29 Penn. St. 198.    *Home Ins. Co.* v. *Davis,* 98 Penn. St. 280.    *Edwards* v. *Baltimore Ins. Co.* 3 Gill, 176.    *Whitehurst* v. *North Carolina Ins. Co.* 7 Jones Law (N. C.), 433.    *Insurance Co. of North America* v. *Brim,* 111 Ind. 281.    *Railway Passenger Assur. Co.* v. *Burwell,* 44 Ind. 460.

If the plaintiff had rendered a statement immediately upon learning of the fire, with his limited knowledge of the circumstances and of the amount, nature and value of the real and personal property destroyed, he necessarily would have made both omissions and misstatements.    He would have been in danger, though making his statement of the particulars only so far as known to himself, of furnishing *prima facie* evidence against the extent of his future claim.    In view of the .intimation of Field, J., in *Towne* v. *Springfield Ins. Co.* 145 Mass. 582, 584, that his neglect or refusal to furnish a detailed statement might be some "evidence of an attempt to defraud the company," he might be exposed to a yet more serious danger.    We cannot say that a delay of merely a few days to acquire information which could be obtained by such a delay for the purpose of guarding against these dangers was as matter of law a lack of due diligence in rendering the statement required.

The bill of exceptions does not show that whatever delay occurred after the return by Crowell of the statements furnished to him by the plaintiff was necessarily fatal.    This delay

could not have exceeded seven days in one case, and twelve days in the other. There is nothing to show how long it was. It may have been due in part to the acts of the defendants themselves. The burden was of course upon the plaintiff to show the exercise of due diligence; but the judge must look at all the evidence, and could consider all the inferences reasonably to be drawn from the evidence.

We are of opinion that the judge was warranted in finding, upon the evidence before him and upon the primary facts which he found to be established, that the plaintiff had used due diligence in this behalf. It follows that he correctly refused to rule that the plaintiff could not recover in the first two cases.

2. In the third case the judge found as a fact that the plaintiff, before the loss occurred, had himself assented to the cancellation of the policy. This finding was of course fatal to the plaintiff's case if the judge had a right to make it. In our opinion, this finding was warranted by the evidence. There was evidence that the plaintiff himself, after the fire but before he learned of it, stated that this policy had been cancelled and that no liability attached to the company. This was like the admissions which were held to warrant a finding in *McMahon* v. *Lawler*, 190 Mass. 343.

Accordingly, in each of the three cases, there must be

*Judgment on the finding.*