JOHN J. EVERSON *vs.* GENERAL ACCIDENT, FIRE AND LIFE ASSURANCE CORPORATION, LIMITED, OF PERTH, SCOTLAND.

Middlesex. March 5, 1909. — May 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Insurance,* Accident. *Words,* "Negotiation," "As soon as possible."

In the provisions of St. 1907, c. 576, § 21, that "no oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance by the assured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive or unless the matter misrepresented or made a warranty increased the risk of loss," the word "negotiation" means the entire transaction of applying for and finally issuing the completed contract of insurance, and the provision applies to warranties which are inserted in the policy itself.

A policy of accident insurance contained a condition precedent to liability of the insurer that, in case of an accident, notice thereof should be sent to the insurer "as soon as possible." The insured, while in a lonely camp far from home and kindred, was injured by the accidental burning of one of his hands so severely as to require its amputation two days later. On the fourth day after the accident he sent a notice of it in writing to the insurance company which issued the policy. In an action on the policy, it was *held,* that the requirement meant that due diligence should be used to send the notice with reasonable promptness, and that it was sufficiently favorable to the defendant to leave to the jury, under proper instructions, the question whether the notice was sent as soon as was possible.

In an action on a policy of accident insurance, it appeared that the plaintiff was injured by the accidental burning of one of his hands so severely as to require

amputation two days later.  In the schedule of warranties in the policy the occupation of the plaintiff was described as " proprietor," his business as " manufacturer of infusorial earth," and his duties as " office duties and travelling only."   The policy provided that " if the insured is injured . . . in any occupation classified by this corporation as more hazardous than that stated in the schedule of warranties, the corporation's liability shall be only for such proportion of the principal sum . . . as the premium paid by him will purchase at the rate fixed by the corporation for such more hazardous occupation."   To show that the plaintiff was injured while in an occupation more hazardous than that described in the warranty, the defendant relied on the facts that for two or three weeks before the accident the plaintiff had been at his works near St. John, New Brunswick, living in a cottage or camp erected for the use of himself and his family, and that, while there, he had directed and assisted in making experiments with infusorial earth in which an acid was used.  There was testimony from which it might have been found that substantially all the manual labor was done by a workman, and the plaintiff testified that he went to the works for rest and recreation, and that whatever he did while there was to this end.  An employee of the defendant, who had testified as an expert in answer to a hypothetical question that the acts named in the question would place the plaintiff in a more hazardous classification than that described in the policy, also testified that it was the business or employment from which the insured derived his livelihood which determined classification by the defendant.  The presiding judge left to the jury the question whether the plaintiff was injured in an occupation classified by the defendant as more hazardous than that stated in the statement of warranties in the policy, and instructed them that, if during the period in question the plaintiff was actually working about machinery, experimenting, using acids, and thus was engaged in a more hazardous occupation, he was entitled only to such portion of the principal sum insured as the amount paid would buy according to the schedule of the company.  *Held*, that the question properly was left to the jury, and that the instruction gave the defendant no ground for complaint.

Where a schedule of warranties, contained in a policy of accident insurance, is made up almost wholly of printed partial assertions or questions, without punctuation at the end, and intended to be filled out, and most of them are filled out by written answers, but in some instances nothing is written in the blank space, although the sentences thus left incomplete may be in the form of assertions instead of questions, they are to be treated as unanswered questions, and neither affirmation nor denial can be inferred from an omission to fill out the blank spaces.

CONTRACT upon a policy of accident insurance issued by the defendant, to recover $10,000 and interest thereon for the accidental loss of the plaintiff's right hand, which was injured by fire in a burning building on November 18, 1907, and was amputated on November 22, 1907.   Writ dated April 15, 1908.

In the Superior Court the case was tried before *White*, J. Among the instructions requested by the defendant were the following:

" 6.  The plaintiff made a warranty in the contract or policy

of insurance declared upon that no application ever made by him for insurance had been declined, and this warranty was not true in fact, and the plaintiff made the same well knowing it to be untrue and with the actual intent and purpose to deceive the defendant and the jury must find for the defendant.

" 7. The plaintiff made a warranty in the contract or policy declared upon that he had not in contemplation at the time of the issuance and acceptance of the policy any special journey or hazardous undertaking, whereas at the same time the plaintiff had in fact a special journey in contemplation and that this warranty was material and was not true in fact and was made with actual intent and purpose to deceive the defendant and the jury must therefore find for the defendant.

" 8. The plaintiff made a warranty in the contract or policy declared upon that his income per week exceeded the gross amount of weekly indemnity under all policies carried by him and this warranty was material and was not in fact true and the plaintiff made the same knowing that it was untrue and that the plaintiff made it with actual intent and purpose to deceive this defendant and therefore the jury must find for the defendant."

The judge refused to give these and other instructions requested by the defendant, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $10,396.72. The defendant alleged exceptions, raising the questions stated and described in the opinion.

*J. F. Bassity*, (*J. S. Bassity* with him,) for the defendant.

*A. H. Russell*, for the plaintiff.

RUGG, J.   1. The first contention of the defendant is that the trial judge erred in refusing to direct a verdict in its favor because of the plaintiff's breach of warranty that his weekly income exceeded the gross amount of weekly indemnity under all policies carried by him.   This statement respecting income appears in a rider pasted on the third page of the contract of insurance, the heading of which is " Schedule of warranties made by the insured on the acceptance of this policy."   The defendant contends that the statements contained in this schedule, being expressed to be a part of the consideration of the policy, are in substance conditions precedent, compliance with which

must be proved affirmatively by the plaintiff. Without discussing whether it is possible to convert what are essentially in the nature of things warranties or representations into conditions by describing them as such, it is enough for the purpose of this case to say that the policy in suit manifests no such design. The statement in question occurs under a general heading "Warranties." Although not signed by the plaintiff, the series of statements, of which it forms one, is in the first person and relates to those matters respecting which information would be needed by an insurer in order to determine whether to take the risk and for what amount and at what rate. The heading names it, and its general character stamps it, as a warranty, and there is no reason why it should be treated as anything else. St. 1907, c. 576, § 21, provides that "No . . . warranty made in the negotiation of a contract or policy of insurance by the assured . . . shall be deemed material or defeat or avoid the policy . . . unless . . . made with actual intent to deceive or unless the matter . . . made a warranty increased the risk of loss."

The defendant contends that this statute does not apply to warranties inserted in the policy itself, but only to those made in the discussion preliminary to the issuance of the policy. The soundness of this contention depends upon the interpretation of the word "negotiation" in the statute. Negotiation means the entire transaction of applying for and finally issuing the completed contract of insurance. "To negotiate" as given by lexicographers as well as by courts in substance is to traffic or conclude by bargain or agreement. *Palmer* v. *Ferry*, 6 Gray, 420, 423. Its use in the law of negotiable instruments illustrates this definition. Its application to those preliminary steps, which precede the final execution of a contract or treaty, is a secondary and by no means exclusive signification. Negotiation as employed in this statute comprehends all warranties, whether made in the policy itself or in separate or subordinate or inducing instruments or agreements. Its collocation with warranty necessarily implies this, because a warranty is a stipulation of the contract itself, often distinct from and collateral to the chief purpose of the contract, sometimes expressed in point of time before the main obligations are phrased, yet, whether made previ-

ously or contemporaneously, none the less a term of the contract, and supported by or becoming a part of its consideration.

The distinction between a warranty and a condition precedent, though sometimes narrow, is nevertheless plain. Such a condition is one without the performance of which the contract, although in form executed by the parties and delivered, does not spring into life. A warranty does not suspend or defeat the operation of the contract, but a breach affords either the remedy expressly provided in the contract or those furnished by the law. This distinction between warranty and condition is accentuated by the statute now under consideration. It prohibits the parties to an insurance contract from attaching to a breach of a warranty the effect of defeating all rights of the insured under the policy, unless in good conscience it ought to have this result, either as increasing the risk or made with intent to deceive. The harshness of the clause formerly common in contracts of insurance, that warranties, if found in any respect untrue, should avoid the policy, is thus mitigated. Under such a provision the conclusion was inevitable that there could be no recovery, if the truth of a statement, although in fact immaterial and not affecting the risk, was made the basis of the contract and it turned out to be false. *Cobb* v. *Covenant Mutual Benefit Assoc.* 153 Mass. 176. *Miles* v. *Connecticut Ins. Co.* 3 Gray, 580. Being remedial legislation the statute must be liberally construed. It follows that the statements in the " schedule of warranties " were made in the negotiation of the insurance contract.

There is nothing inconsistent with this result in *Barker* v. *Metropolitan Ins. Co.* 188 Mass. 542; *S. C.* 198 Mass. 375. The distinction between a condition precedent inserted in the body of the policy as to a subject apart from the common field of warranties or representations, on the one side, and warranties, which are statements as to the physical, material or ancestral condition of the insured, having relation to his desirability as a risk, on the other, was there adverted to and made the basis of the decision. In the present case the amount of the plaintiff's income was left somewhat uncertain on the evidence. Properly the questions as to the falsity of the plaintiff's statement respecting it and his intent to mislead were left to the jury to determine whether the statement as to weekly income, if false, increased

the risk. The inquiries as to the plaintiff's indebtedness were not sufficiently connected with his income to show that they were not rightly excluded in the discretion of the trial judge.

2. The policy required that, in case of an accident, written notice thereof should be sent to the defendant " as soon as may be possible." There is no substantial difference in the meaning of these words and " forthwith " or " immediate " which, as used in similar contracts, have been often before the courts. They mean in such connection that due diligence shall be used to send the notice with reasonable promptness. *Smith* v. *Scottish Union Ins. Co.* 200 Mass. 50, and cases cited. *Bennett* v. *Ætna Ins. Co.* 201 Mass. 554. *Cady* v. *Fidelity & Casualty Co.* 134 Wis. 322. *Edgefield Manuf. Co.* v. *Maryland Casualty Co.* 78 S. C. 73, 79. The plaintiff was injured at a lonely camp in New Brunswick, on the early morning of November 18, by such severe burning of one hand as to require its amputation two days later. He was far from home and kindred. The notice was sent on the fourth day thereafter. It was sufficiently favorable to the defendant to leave it to the jury to say, in view of these circumstances and the inferences reasonably to be drawn from them under the apt and comprehensive instructions given, whether the notice was sent as soon as was possible. *Smith* v. *Scottish Union Ins. Co.* 200 Mass. 50.

There is no ground for exception to the instruction given respecting the authority of Wood,* for the jury were plainly told that the plaintiff could not recover, if no notice was given other than the two notices to Wood. The promptness with which the defendant's agent appeared at the hospital, where the plaintiff was, may have given color to the suggestion that Wood acted as forwarding agent of an earlier notice, and if he did the plaintiff was entitled to the benefit of it.

3. The occupation of the plaintiff was described in the schedule of warranties as " proprietor," his business as " Manufacturer of infusorial earth," and his duties as " office duties and travelling only." The policy provided that "if the insured is injured fatally or otherwise in any occupation classified by this corporation as more hazardous than that stated in the Schedule of Warranties,

---

\* Wood was the insurance agent through whom the policy was obtained.

the corporation's liability shall be only for such proportion of the principal sum . . . as the premium paid by him will purchase at the rate fixed by the corporation for such more hazardous occupation, but claims for injuries sustained while engaged in games or sports for recreation, or while performing duties about the residence, shall not be prorated hereunder." It is not denied that he was engaged in the business described nor that he was proprietor nor that generally his duties were as set forth. But the facts relied upon by the defendant are that for two or three weeks before the accident the plaintiff had been at his works near St. John, New Brunswick, living in a cottage or camp erected for the use of himself and family, and that, while there, he had directed and assisted in making experiments with infusorial earth, which consisted chiefly if not wholly in the use of a small filter press, mixing tripolite with an acid and drying it in a kiln or otherwise and calculating the shrinkage. There was testimony from which it might have been found that substantially all of the manual labor was done by a workman, and the plaintiff testified that he went to the works for rest and recreation, and that whatever he did while there was to this end. The accident may have been found to have happened after all experiments had ended and the laborer had been dismissed, and as the plaintiff was about to return to his home in this Commonwealth. An employee of the defendant, whose duty was to classify its risks, testified, in answer to an hypothetical question embodying in substance the most onerous construction supported by evidence as to what the plaintiff did while at the works, that such acts would. undoubtedly place him in a more hazardous classification than that described in the policy; but he also testified without objection that it was the business or employments from which the insured derived his livelihood which determined classification by the defendant. Plainly upon this evidence the judge could not direct a verdict for the defendant. Occupation is a term of broad significance and includes the trade, calling, profession, office, employment or business by which one usually gets his living. It is not incidental, recreatory or even necessary suspension of the performance of regular duty, which constitutes a change of occupation. Vacation expedients differ almost as widely as the temperaments of men.

The occasional recurrence for diversion or recuperation to tilling the soil does not convert the business or professional man into a farmer. The statesman felling trees for exercise could not thereby be classified properly as a wood chopper by occupation. Where the nature of the employment is narrow and classification is strict and closely subdivided, change from one class of compensated work to another may effect a change, as was held in *Aldrich* v. *Mercantile Mutual Accident Assoc.* 149 Mass. 457. But where comprehensive phraseology is used, a slight variation from daily routine does not rise to the dignity of a change of the main purpose of one's business activity. Cases which support these conclusions are collected in a footnote.*

The judge instructed the jury that if, during the period in question, the plaintiff was actually working about machinery, experimenting, using acids and thus engaged in more hazardous occupation, he was entitled only to such portion of the principal sum insured as the amount paid would buy according to the schedule of the company. The defendant has no ground for complaint in this respect. The instructions upon this branch of the case as to whether the statement of his occupation was false and made with intent to deceive were correct, as has been before pointed out.

4. The defendant has argued several questions of evidence. They might all be summarily disposed of on the familiar principle that having made no offer of proof as to what it expected to prove in response to the general questions excluded, it does not appear to have suffered any injury. But assuming that all answers would have been favorable, no error is disclosed.

---

* *Sharp* v. *McHenry*, 38 Ch. D. 427, 450. *In re Haynes*, 15 Ch. D. 42, 54. *Larchin* v. *North Western Deposit Bank*, L. R. 10 Ex. 64. *Union Mutual Accident Assoc.* v. *Frohard*, 134 Ill. 228, 234. *Kentucky Ins. Co.* v. *Franklin*, 102 Ky. 512. *Wildey Casualty Co.* v. *Sheppard*, 61 Kans. 351. *Miller* v. *Travellers' Ins. Co.* 39 Minn. 548. *Simmons* v. *Western Travelers Assoc.* 79 Neb. 20. *Stone* v. *United States Casualty Co.* 5 Vroom, 371. *Schmidt* v. *American Mutual Accident Assoc.* 96 Wis. 304. *Hess* v. *Preferred Masonic Mutual Accident Assoc.* 112 Mich. 196. *Holiday* v. *American Mutual Accident Assoc.* 103 Iowa, 178. *Standard Ins. Co.* v. *Fraser*, 76 Fed. Rep. 705, 709. *In re Vining*, L. R. 10 Eq. 63, 65. *Brodrick* v. *Scale*, L. R. 6 C. P. 98. *Smith* v. *Cheese*, 1 C. P. D. 60. *Ætna Ins. Co.* v. *Dunn*, 138 Fed. Rep. 629.

The schedule of warranties was made up of printed partial assertions or questions (with two exceptions) followed by blanks. Most of these were filled by written answers. In several instances nothing was written in the blank space. These were in reality questions, although commencing with language appropriate to a declaration, because the graphic form of the printing without punctuation at the end and with a blank space to be filled out indicates an interrogation rather than an assertion. Neither affirmation nor negation can be predicated upon a mere omission under these circumstances. *Nugent* v. *Greenfield Life Assoc.* 172 Mass. 278, 285. *Brown* v. *Greenfield Life Assoc.* 172 Mass. 498, 502.

All other exceptions, not having been argued, are treated as waived.

*Exceptions overruled.*