METROPOLITAN CASUALTY INS. CO. OF NEW YORK v. JOHNSTON.

(Circuit Court of Appeals, Third Circuit.   November 30, 1917.   Rehearing Denied January 8, 1918.)

No. 2252.

1. INSURANCE ☞612(2)—ACCIDENT INSURANCE—NOTICE.
   Provisions in accident policies requiring notice to the insurer within a fixed time or reasonable time are valid. being employed by the insurer to protect itself from fraudulent claims, and must be complied with as a condition precedent to recovery.
2. INSURANCE ☞539(1)—ACCIDENT INSURANCE—NOTICE—PROVISION.
   Where an accident policy requires notice of the accident to be given in a reasonable time, the question of what is a reasonable time depends on the circumstances of the case and the opportunity for giving notice which the circumstances afford to one on whom devolves the duty of giving it.
3. INSURANCE ☞646(9)—ACCIDENT INSURANCE—NOTICE—PROVISIONS.
   Where an accident policy required notice of accident to be given within 21 days, unless not reasonably possible, in which case notice should be given as soon as reasonably possible, the insured or beneficiary of the policy has the burden of proving compliance with the provision, or showing an excuse for failure to give notice within the time limited, and that it was given as soon as reasonably possible.
4. INSURANCE ☞668(14)—ACCIDENT INSURANCE—JURY QUESTION.
   Where the facts are undisputed, and no contradictory inference can be drawn, the question whether one insured under an accident policy which required giving of notice of accident within 21 days, if reasonably possible, complied with the provision, is for the court.
5. INSURANCE ☞668(14)—ACCIDENT INSURANCE—NOTICE—JURY QUESTION.
   In an action on an accident policy, where it appeared that the accident which finally resulted in insured's death deranged his mind, the question whether it was reasonably possible for the insured, or his wife, the beneficiary, or another member of his family, to sooner give notice of the accident, *held* for the jury.
6. APPEAL AND ERROR ☞1002—REVIEW—VERDICT.
   A verdict on evidence from which conflicting issues can be drawn is conclusive.
   McPherson, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge.

Action by Emma E. Johnston, individually and as executrix of the last will and testament of Henry Johnston, deceased, against the Metropolitan Casualty Insurance Company of New York. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Wicoff & Lanning, of Trenton, N. J. (Heyn & Covington and George B. Covington, all of New York City, of counsel), for plaintiff in error.
J. Raymond Tiffany, of Hoboken, N. J., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an action on a policy of accident insurance. While the errors assigned cover the whole range of the trial, the single question urged on review is—Whether notice of the accident was given the insurance company within the time stipulated in the contract of insurance, and whether, accordingly, the trial court erred in refusing a motion for binding instructions in favor of the defendant.

A policy of accident insurance, issued by the defendant company to Henry Johnston, was in force on Feb. 28, 1914, when Johnston fell upon a sidewalk and sustained injuries to his head. On Aug. 30, 1915, he died, and on Sept. 4, following, Emma E. Johnston, his widow and executrix, notified the insurance company of the accident and made claims for indemnities under the policy. The insurance company, considering notification of an accident 18 months after its occurrence to be flagrantly violative of the provision of the policy respecting notice, refused payment, whereupon, the plaintiff brought this suit.

The indemnities which the insurance company had stipulated to pay in the event of accident to the insured were two kinds, namely, weekly indemnities for disabilities payable to the insured, and death indemnity payable to his wife. Action was therefore brought on the double undertaking of the insurance company by the wife of the insured in her dual capacity of executrix and beneficiary.

As the proceedings at the trial followed the double aspect of the cause of action, the court instructed the jury that if they found for the plaintiff they should render two verdicts in her favor, one in her capacity of executrix and the other in her individual capacity. The evidence, so far as we can discern, was of a character that would support one verdict as well as the other, yet the jury, curiously enough, made a discrimination and rendered a verdict against the plaintiff as beneficiary and for the plaintiff as executrix of the insured.

The plaintiff was apparently content with the opposing verdicts. The defendant insurance company was not. It sued out this writ of error, but directed it solely to that part of the judgment which holds it liable to the executrix for weekly indemnities covering the period from the date of the accident to the date of the death of the insured.

The merits of the controversy were embraced in the issues—Whether there was an accident, and if so, whether the disabilities and subsequent death of the insured were solely and directly due to the accident independently of all other causes. With these issues, the defendant concedes, we have nothing to do, as they were resolved by the verdict of the jury in favor of the plaintiff. We are concerned only with the question—Whether the plaintiff was precluded from maintaining this action in either of her capacities, because of the failure (astonishing as it at first appears) to give the insurance company notice of the accident until 18 months after its occurrence.

[1] The rights involved in this litigation are contractual, and arise from an agreement between the parties. This agreement is embodied in the policy of insurance. There the insurer undertook to indemnify

the insured for the consequences of accidents, and the insured undertook to notify the insurer of any accident upon which he would make claim for indemnity. The time within which such notice should be given was indicated in the policy and was agreed to by the insured. The giving of notice within the time stipulated therefor became an undertaking on the part of the insured, the performance of which is regarded by the law as an absolute condition precedent to the enforcement of the insurer's liability.

The provision of the policy is as follows:

"Written notice must be given the company * * * of any accident or injury for which a claim is to be made, * * * within twenty-one days from the date of the accident or injury, *unless* the giving of such notice within such time *shall not be reasonably* possible, *in which event* such notice must be so given *as soon as reasonably possible*."

In inserting this provision in the policy of insurance, it is evident the insurer considered it a substantial feature of the contract and intended that its liability for indemnities should be conditioned upon compliance with it. The law views such provisions as reasonable means to be employed by insurance companies in protecting themselves against fraudulent claims, and requires that they be complied with in the manner and within the time agreed upon as a condition precedent to an action on the policy. But under this rule there frequently arise questions as to what constitutes compliance with such provisions, and courts are called upon to interpret their meaning. So, in this case, it becomes necessary to construe the provision in order to determine whether notice was given in compliance with its terms. The plaintiff urges that the insured, though he gave no notice of the accident, was excused for not complying with the provision because of a mental condition occasioned by the accident, which made compliance impossible. On the other hand, the defendant contends that the insured was not so excused, or, if he was, then the duty of complying with the provision devolved upon his wife, or if not upon her, then upon her niece, who were persons next to the insured and in a measure conversant with the contract of insurance and of the insured's undertaking to give notice.

These contentions, considered with reference to the evidence, raise no new questions of law. The novel feature of the case is in the application of the law to a notice of the unusual character of the one here given 18 months after the accident.

The manifest object of providing in a contract of accident insurance for notice to be given within a time, either precisely prescribed or generally defined, is to afford the insurer an opportunity promptly to inquire into the accident and to take such steps for its protection as can only be taken shortly after its occurrence. To attain this end different insurance companies write different provisions in their policies according to their varying notions of what is necessary for their protection. Some require that the notice shall be given within a specified number of days after the accident, others that "immediate notice" be given, and still others that notice be given "as soon as possible," or "as soon as reasonably possible."

Notice within a given number of days is held by some courts, though harsh, to be unconditionally binding upon the insured, even though the

giving of such notice be made impossible by the very accident insured against. Whiteside v. North American Accident Ins. Co., 200 N. Y. 320, 93 N. E. 948, 35 L. R. A. (N. S.) 696; Roehner v. Knickerbocker Life Ins. Co., 63 N. Y. 160, 164; Heywood v. Maine Mutual Accident Ass'n, 85 Me. 289, 27 Atl. 154. Other courts interpret like provisions as made by the parties in full contemplation of the possibility of the insured being rendered incapable of giving the prescribed notice by the accident insured against, and follow what now appears to be the rule, that, where, because of circumstances surrounding the accident, including the mental condition of the insured as a consequence of the accident, the giving of notice within the time specified becomes impossible, it will be excused, and notice given within a reasonable time after the removal of the obstacle, will be sufficient.

[2] A discussion of these cases appears in a note to Jennings v. Brotherhood Accident Co. (44 Colo. 68, 96 Pac. 982) as reported in 18 L. R. A. (N. S.) 109, 130 Am. St. Rep. 109, and in a note to Hilmer v. Western Travelers' Accident Ass'n (86 Neb. 285, 125 N. W. 535) as reported in 27 L. R. A. (N. S.) 319. As the provision in controversy does not unconditionally limit the giving of notice to a given number of days, some of the cases cited bear upon the question under discussion only as they show the drift of judicial decision from the harsh rule requiring compliance with the provision without regard to the ability of the insured to comply with it, to the more liberal rule that such provisions are made and agreed to in contemplation of the impossibility of literal compliance. Other cases cited bear directly upon the matter under discussion, in that they contain judicial interpretations of the expressions, "immediate notice," and "notice as soon as possible," found in many policies. "Immediate notice" is not construed to mean notice to be instantly given, but is construed to mean "reasonable notice," or notice to be given within a reasonable time. In this regard the defendant concedes that a provision for "immediate notice" is identical in point of law with the provision of the policy in this case requiring (in the last event) that notice "be given as soon as reasonably possible." Foster v. Fidelity, etc., 99 Wis. 447, 75 N. W. 69, 40 L. R. A. 833. The legal meaning of both is that notice shall be given within a reasonable time. What is a reasonable time depends upon the circumstances of the case and upon the reasonable opportunity for giving notice which the circumstances afford the one upon whom devolves the duty of giving it.

See Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 346, 347, 22 Sup. Ct. 833, 46 L. Ed. 1193; Travelers' Ins. Co. v. Nax, 142 Fed. 653, 73 C. C. A. 649; National Surety Co. v. Western Pacific Ry. Co., 200 Fed. 675, 119 C. C. A. 91; People's Mutual Accident Ass'n v. Smith, 126 Pa. 317, 17 Atl. 605, 12 Am. St. Rep. 870; Lyon v. Assur. Co., 46 Iowa, 631; Roseberry v. American Ben. Ass'n, 142 Mo. App. 552, 121 S. W. 785.

[3] The provision in dispute contains two binding clauses and one saving clause. As we construe it, the first requires written notice of an accident within twenty-one days from the date of its occurrence. By this clause the insured is bound to give notice within the time specified, unless, as provided by the saving clause that follows, the

giving of notice within that time shall not be reasonably possible. In that event, the concluding clause binds the insured to give notice as soon thereafter as is reasonably possible. In suing on a policy containing such a provision, an insured, or his legal representative, has the burden of showing performance of this condition precedent. He must show that notice was given within twenty-one days, or, failing in this, he must excuse his failure by showing that it was not reasonably possible for him to give notice within that time, and that he has complied with the remaining clause by giving notice as soon thereafter as was reasonably possible. Whether notice was not given within the initial limit of twenty-one days because it was not reasonably possible, and whether it was given as soon thereafter as was reasonably possible, this being the ultimate limit of the provision, are clearly questions of fact and ordinarily are questions for the jury. Whether such questions are for the jury or the court is determined by familiar rules. Travelers' Ins. Co. v. Nax, 142 Fed. 653, 660, 73 C. C. A. 649.

[4] If the facts are not controverted, or, if from proven facts no doubtful inferences can be drawn as to the reasonable impossibility of the insured giving notice within twenty-one days, or as to whether he gave notice as soon thereafter as was reasonably possible, then, of course, there is nothing to submit to the jury and the court may hold as a matter of law that the condition precedent has or has not been performed. But, if the facts and circumstances are controverted, and are such as to sustain an inference that it was not reasonably possible for the insured to give notice within twenty-one days, and that the notice thereafter was given as soon as was reasonably possible, the question whether the insured has performed the condition precedent to the enforcement of the insurer's liability for indemnity is for the jury. The language of Mr. Justice Paxson, in speaking for the Supreme Court of Pennsylvania, in People's Mutual Accident Ass'n v. Smith, 126 Pa. 317, 17 Atl. 605, 12 Am. St. Rep. 870, is peculiarly appropriate to this discussion. He said:

"A person might be so injured as to be physically unable to give the notice for weeks. Hence it is that such questions are referred to the jury, to say whether, under all the circumstances, there has been an unreasonable delay in giving notice."

See National Surety Co. v. Western Pacific Ry. Co., 200 Fed. 675, 681, 119 C. C. A. 91; Travelers' Ins. Co. v. Nax, 143 Fed. 653, 73 C. C. A. 649; Hughes v. Central, etc., 222 Pa. 462, 71 Atl. 923; Everson v. General, etc., 202 Mass. 169, 88 N. E. 658. (" * * * as soon as possible").

[5, 6] Applying these observations to the facts of this case, startling as these facts are, we shall first inquire whether a right of action on the policy by the personal representative of the insured was lost by the failure of the insured to give notice at any time. This inquiry can readily be disposed of. The evidence upon which the jury found that injury to the insured and his death were due solely to the accident was sufficient to sustain a finding that the accident created a mental condition in the insured which made compliance with the pro-

vision of the policy impossible. The trial court squarely charged the jury, that if they found it was reasonably possible for the insured to give notice at any time, the plaintiff could not recover. The verdict was for the plaintiff, hence the verdict was a finding that it was not reasonably possible for the insured, in view of his mental condition, to give notice at any time after the accident. By this finding, the insured was excused.

The next questions are—Whether the undertaking of the insured to give notice of the accident devolved upon his wife when he became incapable of performing it, and whether the court should have decided that question as a matter of law.

The defendant contends, upon authority of a stray dictum in Travelers' Ins. Co. v. Nax, 142 Fed. 653, 657, 73 C. C. A. 649, that the provision of the policy required notice to be given by someone on behalf of the insured within the time prescribed, if the insured himself was not able to give the notice. The controlling fact of the Nax case was that the insured was in full possession of his faculties for a long period after the accident and could have given the notice, and the point of decision was that being able to give notice, he was bound to give it, and that his failure barred recovery on the policy by his personal representative. Manifestly the Nax case does not rule this case.

The evidence upon which the defendant bases its contention that the wife of the insured was bound to give the notice required of him is meagre and unsatisfactory. The evidence tends to prove that Johnston never spoke of his accident insurance after the accident; that Mrs. Johnston knew that her husband carried a policy of accident insurance and that he kept it in a safe deposit box, the key to which was accessible; that she did not know the name of the company which issued the policy; that in September, 1914, about 7 months after the accident, there was received in her husband's mail a renewal certificate in the form of a receipt for a renewal premium of $40.00, then due on the policy; that, accepting this certificate as a notice as well as a receipt, Mrs. Johnston sent her check for $40.00 to the insurance company, enclosed in a letter showing that the check was in payment of a premium on the policy in suit; that the letter and check had been written by her niece and that she signed them at her request; and that she was wholly ignorant of the terms and conditions of the policy until after her husband's death, when she found the policy and promptly gave notice of the accident.

From this testimony, it was possible for the jury to find two facts, first, that Mrs. Johnston knew of the existence of the policy, and second, that she was ignorant of its terms. The trial court refused to find as a matter of law that Mrs. Johnston knew the terms of the policy, and refused to hold, therefore, that she was bound by the undertaking of her husband to give notice of the accident, as a condition precedent to her action on the policy. What the court did was to leave the question of Mrs. Johnston's knowledge of the terms of the policy to the jury, under instructions that if they found that she knew the terms of the policy in the life time of her husband, it was her duty to give the notice, and failing so to do, she could not recover.

The jury rendered a verdict for Mrs. Johnston as executrix of her husband's will, which was a finding that she did not know the terms of the policy. Clearly no duty devolved upon the wife to perform an undertaking of her husband to which she was not a party and of which she was ignorant. Assuming without deciding, that such a duty devolved upon her had she knowledge of her husband's undertaking, the finding by the jury that she had no such knowledge, disposed of any question of her duty and left her free to maintain this action.

The contention that the action was barred because the niece failed to give the notice which the policy required of the insured, is no stronger than the case made against the wife; for, while the evidence showed that the niece had a wider knowledge of the business affairs of the insured, it was sufficient for the jury to find that she also was ignorant of the terms of the policy.

In showing knowledge of the terms of the policy on the part of the wife and the niece, the defendant laid stress, with no little force, upon a phrase appearing in the renewal certificate received after the accident. In this certificate were printed in conspicuous type the words —"Notify the Company at Once in Event of Accident." This direction to the insured, coming it is assumed within the observation of the wife and niece, is persuasive of the defendant's contention that they were thereby substantially informed of the terms of the policy, yet, opposed to this evidence, there was the testimony of the wife and niece that they were ignorant of its terms, and the jury, by accepting, reconciling or disregarding the testimony as they chose, found that the wife and niece did not know the terms of the policy.

The finding of the jury was in effect, that it was not reasonably possible for the insured to give notice of the accident because of his mental incapacity occasioned by the accident; and that it was not reasonably possible for the wife and niece to give notice for him, because of their ignorance of the requirement until after his death, when, the obstacle of their ignorance being removed, notice was given as soon as reasonably possible. This finding was upon a question which the court could not avoid submitting and was sustained by one view of the evidence. It is not within our province to say that the finding was wrong. It, therefore, concluded the defendant.

The judgment below is affirmed.

McPHERSON, Circuit Judge (dissenting). I agree with nearly all that has been so well said by Judge WOOLLEY, but I regret to find myself obliged to disagree at a vital point. In my opinion the company was entitled to binding instructions, for the reason that the wife and the niece should be conclusively charged with knowledge of the company's provision for notice, and should bear the consequence of their failure to comply until nearly a year thereafter. The insured was injured in February, 1914; in September his wife and his niece received and read the company's letter concerning the renewal of the policy, the letter bearing the words in large type "Notify the Company at Once in Event of Accident," and they acted on the letter by paying the premium and thus extending the policy for another year. The insured did not die until August 30, 1915, but no notice of the

accident was given until September 4, a year and a half after the fall, and almost a year after the wife and the niece had learned that prompt notice of the injury was required. I do not see how a court could permit a jury to find that they did not know the contents of the letter, when concededly they opened it and read it and sent a check to the company in compliance with its contents, even referring to the policy by its number and the name of the insured. Those who receive and act upon a writing must be held to know its terms, just as a man cannot be allowed to say that he looked, but did not see a train, although he stepped directly in front of a moving car.

Moreover, no one can doubt that the wife and the niece had a right to make the payment, although they were assuming to act for the insured without his express authority, and no one can doubt that they would have been justified also in giving notice of the accident on his behalf. The closeness of the family relation is a sufficient reason, coupled with his inability to act for himself. But if the wife and the niece had these implied rights, I think they were impliedly bound to discharge the corresponding duties. If they stood in the shoes of the insured, and were protecting the interest that he could not protect for himself, why were they not bound by the same duty that would have bound him—of course so far only as their actual or presumed knowledge extended? In a word, the evidence seems to me conclusive that they knew what was conspicuously before their eyes, and since they knew it I think they were bound to act thereon. No doubt they had a reasonable time to act after the knowledge reached them, but under the facts of this case a year is not reasonable, and I think the court should have said so as a matter of law.