STILL ASSOCIATES, INC. *vs.* CHARLES A. PORTER & others.[1]

Suffolk.   February 17, 1987. — April 3, 1987.*

Present: GREANEY, C.J., CUTTER, & FINE, JJ.

*Mortgage,* Foreclosure. *Practice, Civil,* Attachment, Execution. *Words,*
"Mesne process."

Where a judgment creditor did not attach certain real property until after the
entry of final judgment in a civil action, there had been no attachment
on "mesne process," and thus the creditor's rights were governed by the
first sentence of G. L. c. 236, § 4, rather than the second sentence.
[27-30]
The actions of a deputy sheriff in depositing in the appropriate registry of
deeds a copy of the execution on which certain land was to be taken,
together with the memorandum referred to in the first sentence of G. L.
c. 236, § 4, fulfilled the applicable recording requirements of § 4, and
the sheriff's subsequent deed conveying the land was valid. [30-31]

CIVIL ACTION commenced in the Superior Court Department
on May 8, 1979.

The case was heard by *James P. McGuire,* J.

*Daniel Briansky* for Irwin S. Alpert.

*Thomas J. Freedman* for Phyllis Smolar.

FINE, J. Still Associates, Inc. (Still Associates), brought
this interpleader action claiming that it was holding $7,116.31
in surplus funds as a result of a mortgage foreclosure sale. It
named eight defendants alleged to have an interest in the funds,
including the Porters, the debtors who were the former owners
of the mortgaged real estate. Only two of the named defendants

---

[1] Kent P. Porter, State Street Bank and Trust Company, Peter J. Caten,
Phyllis Smolar, Irwin S. Alpert, Adelaide Bravoca, and John Stow.

* On June 4, 1987, the court, having considered an application for rehear-
ing, amended its opinion to provide for entry of judgment in favor of Irwin
S. Alpert in the amount of $7,116.31. The opinion, as so amended, appears
below.

appeared at trial to assert claims to the funds. One, Irwin S. Alpert, relied upon a sheriff's deed of the real estate. The other, Phyllis Smolar, based her claim upon an attachment of the real estate and a judgment against the debtors in the amount of $31,287.96. The Porters and the remaining creditors were defaulted. At the jury-waived trial in the Superior Court, most of the evidence was documentary. The judge found that the judgment creditor through whom Alpert claimed had not complied with the recording requirements of the second sentence of G. L. c. 236, § 4, which he ruled to be applicable to Alpert's claim. Consequently, he concluded that the attachment on which Alpert relied was void and that Smolar was entitled to the surplus funds, which he ordered Still Associates to deposit in court.[2] On his appeal from the judgment,[3] Alpert contends that the judge's ruling was in error because the first sentence of G. L. c. 236, § 4, was applicable to his claim, not the second sentence. We agree with that contention, for reasons which we proceed to explain, and we reverse the judgment.

It is essential that we recite the chronology of the relevant events. In 1969, the Porters took title to the real estate as

---

[2] Apparently the funds have not been deposited in court. After judgment entered, Alpert moved to compel Still Associates, Inc., to comply with the order, but the judge, without explanation, denied the motion. Alpert also appeals from the denial of that motion. Since the record reveals that Still Associates requested court permission in its complaint to deposit the funds, and that the funds exist in a bank account, but that Still Associates was dissolved in 1984, there is no justification for any further delay in depositing the funds in court, with interest, see *infra*, note 7, and accompanying text.

[3] Alpert filed a timely motion for a new trial, which was denied, and then a timely appeal from both the denial of the motion and the judgment. Alpert also moved to amend the judgment. However, this motion was not served timely under Mass.R.Civ.P. 59(e), 365 Mass. 828 (1974), and Alpert does not press this claim on appeal. We therefore do not consider it.

We do not understand why the parties have addressed the issues on appeal as if the question before us is whether the judge abused his discretion in denying the motion for a new trial. Because a timely appeal from the judgment is before us, we review it under the traditional standards, asking whether the findings of fact are clearly erroneous, Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974); *First Pennsylvania Mortgage Trust* v. *Dorchester Sav. Bank,* 395 Mass. 614, 621 and n.11 (1985), and whether the decision is erroneous as a matter of law.

tenants by the entirety. On October 26, 1977, the Federal Deposit Insurance Corporation (FDIC) recovered judgment against Charles A. Porter for $2,279.27. It obtained an execution on that judgment on November 23, 1977. On December 23, 1977, Still Associates made a loan to the Porters on a second mortgage on the property. FDIC levied upon its execution on January 6, 1978, by placing it in the hands of a deputy sheriff, who recorded it on the same day. On March 24, 1978, Smolar obtained and recorded a real estate attachment for $35,000 in an action against Charles A. Porter. On April 5, 1978, at a sheriff's sale of the real estate pursuant to the FDIC levy, Alpert's bid of $2,475.05 was the highest. He received a sheriff's deed which was recorded on June 23, 1978. Smolar recovered judgment against Porter on June 27, 1978, for $31,287.96, and on July 6, 1978, obtained an execution on that judgment. On December 22, 1978, Still Associates conducted a foreclosure sale of the Porter property based on its second mortgage. The surplus which resulted from that sale is the subject of this litigation.

General Laws c. 236, § 4, as in effect prior to St. 1980, c. 152, set forth in its entirety in the margin,[4] determines Al-

---

[4] "If land, which was not attached on mesne process in the action in which the execution issued, is taken on execution, the officer shall forthwith deposit in the registry of deeds for the county or district where the land lies a copy of the execution with a memorandum thereon that the execution is in his hands for the purpose of taking the land of the defendant, and no such taking shall be valid against a purchaser in good faith, for value and without notice, before such copy is deposited. If land was attached on mesne process, a copy of the execution with a memorandum as aforesaid shall be deposited by the officer in the registry of deeds for the county or district where the land lies, within forty days after the judgment in the action, and the attachment shall become void forty days after said judgment unless the copy is so deposited; provided, that if land was attached on mesne process in Nantucket county and judgment was rendered in another county, or if judgment was rendered in Nantucket county and land was attached in another county, said copy shall be deposited within seventy days after judgment in the action, and the attachment shall become void seventy days after said judgment unless the copy is so deposited."

A 1980 amendment, St. 1980, c. 152, struck out the second sentence and inserted in place thereof the following sentence: "If land was attached on mesne process, a copy of the execution with a memorandum as aforesaid

pert's rights. The judge found that FDIC "obtained a judgment and execution by mesne process." He looked, therefore, to the second sentence of the statute which requires that "a copy of the execution with a memorandum [that the execution is in the sheriff's hands for the purpose of taking the defendant's lands] . . . be deposited . . . within forty days after the judgment in the action . . . ." Otherwise, "the attachment shall become void." FDIC deposited its execution in the registry on January 6, 1978, seventy-two days after it recovered judgment on October 26, 1977. Even under the more generous calculation of the trial judge, who for these purposes equated "judgment" with "execution", FDIC's recording occurred four days after the forty-day deadline. If the forty-day recording requirement applied to the levy on FDIC's execution, it was not met.

Alpert contends that FDIC did not attach the real estate in the action on its claim against the Porters at any time prior to the entry of final judgment in the FDIC case and, therefore, that the real estate had not been "attached on mesne process." The parties do not dispute that there was no prejudgment attachment by FDIC. What Smolar relies upon, and what the trial judge apparently relied upon as well, is the statement in the printed form which constitutes the sheriff's deed which states that the sheriff, "having on the sixth day of January in the year one thousand nine hundred and seventy-eight by virtue of a writ of execution which was issued on a judgment recovered

---

shall be deposited by the officer in the registry of deeds for the county or district where the land lies, within forty days after the date which appears on the execution issued upon the judgment in the action, and the attachment shall become void forty days after said date unless the copy is so deposited; provided, that if land was attached on mesne process in Nantucket county and judgment was rendered in another county, or if judgment was rendered in Nantucket county and land was attached in another county, said copy shall be deposited within seventy days after the date which appears on the execution issued upon judgment in the action, and the attachment shall become void seventy days after said date unless the copy is so deposited."

The 1980 amendment does not affect the outcome of this case. Although the trial judge applied the provision governing "mesne process" to Alpert's claim, he determined that the forty-day period began not from the date of "judgment", as required by the pre-1980 statute, but from the later date of execution.

. . . seized and taken all the right, title, and interest which the said Charles A. Porter had on the sixth day of January in the year one thousand nine hundred and seventy-eight being the time when the same *was attached on mesne process* . . ." (emphasis supplied). The term "attached on mesne process," however, refers to process issued before entry of final judgment. "[I]t [is] used in contradistinction to final process, and this is the sense in which it is generally used in our statutes." *Place* v. *Washburn,* 163 Mass. 530, 531 (1895). See also *Kahler* v. *Marshfield,* 347 Mass. 514, 516 (1964); Ballentine's Law Dictionary 795 (3d ed. 1969). Property may be taken on execution, on the other hand, only after final judgment. On January 6, 1978, an execution having been obtained on the judgment in favor of FDIC, the sheriff could not have "attached [the property] on mesne process," as that phrase is used in the statute and generally understood. Thus, we must look to the requirements of the first sentence of G. L. c. 236, § 4, to determine Alpert's rights. It provides that, "[i]f land, which was *not attached on mesne process* in the action in which the execution issued, is taken on execution, the officer shall *forthwith* deposit in the registry of deeds . . . a copy of the execution with a memorandum . . ., and no such taking shall be valid against a purchaser in good faith, for value and without notice, before such copy is deposited" (emphasis supplied).

FDIC's execution issued on November 23, 1977, and was valid for twenty years from the date of judgment. G. L. c. 235, § 23. The property was "taken on execution" no earlier than January 6, 1978. On that date FDIC placed the execution in the hands of a deputy sheriff who "forthwith"[5] recorded the necessary documents. Compare *Hall* v. *Crocker,* 3 Met. 245, 247, 249-251 (1841). Thus, the requirements of the first sentence of G. L. c. 236, § 4, were met. Alpert's sheriff's deed

---

[5] The term "forthwith" in its usual sense requires action which is substantially immediate, or taken with due diligence. See, e.g., *Everson* v. *General Acc. Fire & Life Assur. Corp.,* 202 Mass. 169, 174 (1909); *Gamwell* v. *Bigley,* 253 Mass. 378, 382 (1925); *Lafleur* v. *Chicopee,* 352 Mass. 746, 752 (1967); *Gifford* v. *Spehr,* 358 Mass. 658, 659, 661-662 (1971).

to the property was valid, therefore, and entitled him to assert his claim against the proceeds.[6]

Accordingly, the judgment entered in the Superior Court is reversed, and a new judgment shall enter in favor of Alpert in the amount of $7,116.31 plus interest at the rate of six percent.[7]

*So ordered.*

---

[6] Smolar, on the other hand, is not entitled to any of the surplus funds. As an attaching creditor who had obtained final judgment on her claim, she had to comply with two statutory requirements: G. L. c. 223, § 59, as amended by St. 1977, c. 685, which extended the attachment for thirty days after execution on the judgment but required a levy within that period, and the provision of G. L. c. 236, § 4 (as in effect prior to St. 1980, c. 152), regarding land "attached on mesne process," which required (as a condition of preserving her attachment) a copy of the execution to be deposited in the registry of deeds within forty days of the date of judgment. Both statutes had to be satisfied to preserve the attachment. *McGrath* v. *Worcester County Natl. Bank,* 3 Mass. App. Ct. 599, 601 (1975). See Nolan, Civil Practice § 826 (Supp. 1985). Nothing in the record indicates that Smolar levied on the execution or deposited a copy of the execution in the registry within the required time periods.

[7] General Laws c. 107, § 3. There is no requirement that Still Associates pay interest on the surplus funds at the rate of 18%, as requested by Alpert.